UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DATABRICKS, INC.,

          Plaintiff,

    v.

JAMES WEISFIELD, RIAD CHUMMUN,
ASCEND IP, LLC, ASCEND INNOVATION
MANAGEMENT, LLC, MIND FUSION,
LLC, BYTEWEAVR, LLC,

          Defendants.

Case No.: _____

**COMPLAINT**

**JURY DEMAND**

## INTRODUCTION

James Weisfield and Riad Chummun are the orchestrators of an unlawful scheme to extort nuisance settlements from the world's leading technology companies, including Databricks, by making patent infringement assertions in bad faith.

Weisfield and Chummun start by identifying and then acquiring expired, facially invalid, and worthless patents. Around the same time, Weisfield and Chummun form a series of underfunded shell companies. These shell companies are integral to their scheme and reflective of their bad faith assertions. These shells conduct no business and produce no products. They have no employees and own no assets of value. These shells exist solely on paper and for purposes that advance Weisfield's and Chummun's extortion scheme. Weisfield and Chummun cause one shell to acquire the worthless patents, and then they assign those patents to another shell. But because Weisfield and Chummun control each entity, these paper transactions serve no legitimate purpose. Instead, they merely allow Weisfield and Chummun to bury the patent-holding entity—

- 1 -

the entity making bad-faith assertions of patent infringement—at the bottom of a multi-layer, shell-company hierarchy. Weisfield and Chummun do this not only to cloak the true ownership and control of the patents, but also to insulate themselves from any adverse judgments or liabilities resulting from their scheme. In other words, knowing full well that they may be liable for attorneys' fees for their bad faith assertions of patent infringement, Weisfield and Chummun abuse the corporate form by leaving underfunded shells on the hook for any judgments, forcing those who obtain a judgment against the companies under their control to pierce several corporate layers to recover from the real parties in interest: Weisfield and Chummun.

Next, Weisfield and Chummun partner with law firms on a contingency fee basis to assert their worthless patents. This allows Weisfield and Chummun to avoid paying anything out of pocket. Instead, Weisfield and Chummun pay their law firms with the proceeds, if any, of their extortion scheme.

Finally, Weisfield and Chummun choose the victims of their scheme and file meritless patent lawsuits. They do so despite knowing that the patents they assert will be found invalid if challenged. And they do so regardless of whether they have a good-faith basis to assert infringement. They conduct little or no diligence before asserting their patents, or they ignore the glaring deficiencies in their assertions. They hope to score quick, nuisance-value settlements based on the cost to defend a multi-patent lawsuit rather than litigate their patents' true litigation value—which they know is nothing.

Although mechanisms exist to deter frivolous patent litigation, Weisfield's and Chummun's scheme is designed to thwart them. For example, if one of their targets resists, defends itself, and is awarded fees under the Patent Act's fee-shifting statute or other sanctions, Weisfield and Chummun hide behind their layered network of shell companies to insulate themselves—the true owners of the patents and the real parties in interest—from any liability. Believing they can dodge any repercussions from their extortion scheme, Weisfield and Chummun wield their worthless patents with abandon.

Databricks is one of dozens of companies targeted and harmed by Weisfield's and Chummun's extortion scheme. This action seeks to hold them liable.

**NATURE OF THE ACTION**

1.      This is an action for a judgment that Defendants have committed acts of unfair competition in violation RCW 19.86 *et seq*. (the Washington State Consumer Protection Act) and engaged in a civil conspiracy under Washington state law.

**THE PARTIES**

***Databricks, Inc. ("Databricks")***

2.      Databricks, Inc. is a corporation organized under the laws of Delaware with its principal place of business in 160 Spear Street, San Francisco, CA 94105.

3.      Databricks is a world leader in data and artificial intelligence (AI).  Ranked as No. 2 on Forbes' 2024 Cloud 100 list, Databricks is the inventor of the Lakehouse paradigm and a pioneer in generative AI.[1]  With its innovative technologies, Databricks empowers organizations to scale the use of data and power the creation of new data products, including generative AI applications.

4.      Databricks was founded in 2013 by the original creators of Apache Spark—a widely used, open-source analytics engine that was created out of the University of California Berkley.[2]

5.      Since its founding in 2013, Databricks has fundamentally transformed how organizations process, store, share, analyze, model, and monetize datasets with solutions from business intelligence ("BI") to generative AI.   Databricks developed an innovative interface and tools for most data tasks, including data processing, scheduling, and management; generating dashboards and visualizations; managing security, governance, high availability, and disaster recovery; data discovery, annotation, and exploration; machine learning (ML) modeling, tracking, and model serving; and generative AI solutions.

6.      Today, Databricks offers customers the Databricks Data Intelligence Platform:  a unified, open analytics platform for building, deploying, sharing, and maintaining enterprise-grade data, analytics, and AI solutions at scale.   The Databricks Data Intelligence Platform is built upon

---

[1] https://www.forbes.com/lists/cloud100/; https://www.databricks.com/why-databricks/executives.
[2] https://aws.amazon.com/what-is-apache-spark/;
https://www.forbes.com/councils/forbestechcouncil/2019/08/20/from-spark-to-airflow-and-presto-demystifying-the-fast-moving-cloud-data-stack/.

the world's first and only Lakehouse platform in the cloud, and it uses generative AI and natural language processing to understand the unique semantics of an organization's data. Using the Data Intelligence Platform, Databricks' customers can create custom AI models based on their proprietary datasets, thereby optimizing performance and managing infrastructure to match the organization's needs.[3]

7.     Databricks' impact in the data and AI space is far-reaching. Databricks hosts an annual Data and AI Summit, the premier event for the global data community—this year, bringing together 16,000 in-person attendees and more than 40,000 remote attendees to learn about and share insights regarding the latest innovations in data and AI.[4]   Thousands of organizations worldwide across a variety of industries—including AT&T, Columbia, Grammarly, JetBlue, Mercedes-Benz, Michelin, Rivian, T-Mobile, TD Bank, Warner Bros. Discovery, Accenture, and Nasdaq—rely on Databricks to enable massive-scale data engineering, collaborative data science, full-lifecycle machine learning and business analytics.[5]

### *James Weisfield and Riad Chummun*

8.     Databricks' groundbreaking technological developments and contributions to the data and AI industries stand in stark contrast to those of James Weisfield, Riad Chummun, and their many corporate shell entities.

9.     Upon information and belief, James Weisfield is an individual residing within this District and in King County, Washington.  Upon information and belief, James Weisfield asserts control over the Corporate Entity Defendants and the Non-Party Corporate Entities.

10.     Upon information and belief, Riad Chummun is an individual residing within this District and in King County, Washington.  Upon information and belief, Riad Chummun asserts control over the Corporate Entity Defendants and the Non-Party Corporate Entities.

11.     Weisfield and Chummun are no strangers to patents or patent litigation.  Weisfield and Chummun both spent more than a decade at Intellectual Ventures.  Described by some as the

---

[3] https://docs.databricks.com/en/introduction/index.html;
https://www.forbes.com/sites/kenrickcai/2023/11/14/databricks-data-intelligence-platform-mosaicml/?sh=2a494f717c1a/.
[4] https://www.databricks.com/blog/data-ai-summit-2024-executive-summary-data-leaders.
[5] https://www.databricks.com/customers/all.

COMPLAINT                                      - 4 -
CASE NO.: _____

"most hated company in tech," "Intellectual Ventures, for lack of a better word, is [in] the troll business" as "an aggressive, lawyer-driven organization looking to make money from the many, many patents it owns, whether you like it or not."[6]

12.     Since leaving Intellectual Ventures, Weisfield and Chummun joined forces to create Defendant Ascend IP, LLC.  According to Ascend IP's website, Weisfield and Chummun "boast over four decades of collective intellectual property expertise, having successfully generated billions of dollars through strategic patent portfolio monetization."[7]  Weisfield's and Chummun's experience allows them to "craft[ ] infringement case[s]," thereby "uncovering hidden value" of patent assets and "ingeniously monetizing them."[8]

13.     Upon information and belief, Weisfield and Chummun are skilled at evaluating individual patents and portfolios, including determining whether patents are likely invalid.  Upon information and belief, Weisfield and Chummun are familiar with the Patent Laws, case law applying them, and understand all facets of the patentability requirements of subject matter eligibility, novelty, obviousness, written description, enablement, and definiteness.

14.     Upon information and belief, Weisfield and Chummun are familiar with post-grant proceedings at the United States Patent and Trademark Office, including *inter partes* review proceedings.  Upon information and belief, Weisfield and Chummun understand that, if the USPTO grants a petition for *inter partes* review seeking to invalidate certain patent claims, the USPTO has determined that at least some of those claims are likely invalid.

15.     Upon information and belief, Weisfield and Chummun are skilled at determining whether a patent claim is likely infringed.  Conversely, upon information and belief, Weisfield and Chummun are also skilled at determining whether an infringement claim is unlikely to succeed or lacks merit.

16.     Upon further information and belief, Weisfield and Chummun are familiar with the Federal Rules of Civil Procedure and caselaw that impose on a patentee a duty to conduct pre-filing diligence before filing a patent lawsuit, including evaluating whether infringement

---

[6] https://www.cnet.com/tech/tech-industry/inside-intellectual-ventures-the-most-hated-company-in-tech/.
[7] https://ascendip.com/.
[8] *Id.* (client testimonial).

COMPLAINT                                                                      - 5 -
CASE NO.: _____

allegations have support and whether the claims asserted are likely invalid.  Upon information and belief, Weisfield and Chummun understand that if a patentee asserts claims without conducting the proper diligence, or asserts claims despite determining that its infringement allegations lack merit or the claims are likely invalid, a patentee is subject to liability under the Patent Act's fee-shifting statute, other federal statutes, or sanctions.

### *Ascend IP, LLC ("Ascend IP")*

17.     Upon information and belief, Ascend IP is a Washington limited liability company, and it lists its principal place of business as 7683 SE 27th St., #476, Mercer Island, WA, 98040. Ex. 1.  Upon information and belief, Republic Registered Agent, LLC is the registered agent for Ascend IP.  *Id.*  Upon information and belief, James Weisfield and Riad Chummun are the officers of, and exert full control over, Ascend IP.  *Id.*

18.     Upon information and belief, through Ascend IP, Weisfield and Chummun direct and control the actions of the other Corporate Entity Defendants and the Non-Party Corporate Affiliates, which collectively form a single enterprise.  Upon information and belief, Weisfield and Chummun shield any assets held by Ascend IP from potential liability resulting from their extortion scheme through the other Corporate Entity Defendants and the Non-Party Corporate Affiliates.

### *Ascend Innovation Management, LLC ("Ascend Innovation")*

19.     Upon information and belief, Ascend Innovation is a Washington limited liability company, and its principal place of business is located at 7683 SE 27th St., #476, Mercer Island, WA, 98040. Ex. 2.  Upon information and belief, Republic Registered Agent, LLC is the registered agent for Ascend Innovation.  *Id.*  Upon information and belief, James Weisfield and/or Riad Chummun are the officers of, and directly or indirectly exert full control over, Ascend Innovation. *Id.*

20.     Upon information and belief, through Ascend Innovation, Weisfield and Chummun direct and control the actions of the other Corporate Entity Defendants and the Non-Party Corporate Affiliates, which collectively form a single enterprise.  Upon information and belief, Weisfield and Chummun shield any assets held by Ascend Innovation from potential liability resulting from their

extortion scheme through the other Corporate Entity Defendants and the Non-Party Corporate Affiliates.

### *Mind Fusion, LLC ("Mind Fusion")*

21.     Upon information and belief, Mind Fusion is a Texas LLC, with its principal place of business at 700 South Central Expressway, Ste. 400 PMB #130 Allen, TX 75013.   Upon information and belief, Mind Fusion was a Washington limited liability company until its transfer to Texas on April 29, 2024.  Upon information and belief, until Mind Fusion transferred to Texas, its principal place of business was 9407 NE Vancouver Mall Dr. Ste. 104 #1253, Vancouver, WA 98662.    Ex. 3.   Upon information and belief, until Mind Fusion transferred to Texas, Republic Registered Agent, LLC ("RRA") was the registered agent for Mind Fusion.  *Id.*  Upon information and belief, Mind Fusion is a wholly owned subsidiary of Ascend Innovation Management, LLC, which is a Washington limited liability company.  *Byteweavr, LLC v. Databricks, Inc.*, Case No. 1:24-cv-00162, Dkt. # 29 (E.D. Tex. July 6, 2024.)  Upon information and belief, James Weisfield and/or Riad Chummun are the officers of, and directly or indirectly exert full control over, Mind Fusion.

22.     Upon information and belief, through Mind Fusion, LLC, Weisfield and Chummun direct and control the actions of the other Corporate Entity Defendants and the Non-Party Corporate Affiliates, which collectively form a single enterprise.  Upon information and belief, Weisfield and Chummun shield any assets held by Mind Fusion, LLC from potential liability resulting from their extortion scheme through the other Corporate Entity Defendants and the Non-Party Corporate Affiliates.

### *Byteweavr LLC ("Byteweavr")*

23.     Upon information and belief, Byteweavr is a Texas limited liability company with its address located at 17350 State Hwy 249, Suite 220, Houston, Texas 77064.  Upon information and belief, RRA is listed as the registered agent for Byteweavr.  Upon information and belief, James Weisfield and Riad Chummun, directly or indirectly through the Corporate Entity Defendants, exert full control over Byteweavr.

24.     Upon information and belief, Byteweavr is a wholly owned subsidiary of either RRA or Mind Fusion.  Weisfield and Chummun have caused Byteweavr to file conflicting information about its ownership and control.  Byteweavr's initial Rule 7.1 disclosures in the case *Byteweavr, LLC v. Databricks, Inc.*, Case No. 1:24-cv-00162 (E.D. Tex. filed March 8, 2024) (the "*Databricks* action") represent that Byteweavr "is a wholly owned subsidiary of Republic Register Agent, LLC [i.e., RRA], which is itself a wholly owned subsidiary of Mind Fusion, LLC." *Databricks* action, Dkt. # 3.  Weisfield and Chummun caused Byteweavr to file a similar disclosure in the case *Byteweavr, LLC v. Cloudera, Inc.*, Case No. 1:24-cv-00261 (E.D. Tex. filed March 8, 2024) (the "*Cloudera* action").  *Cloudera* action, Dkt. # 3.  Once Byteweavr's ownership structure came under scrutiny, however, Weisfield and Chummun caused Byteweavr to file updated Rule 7.1 disclosures.  These new disclosures omit any mention of RRA.  Instead, they claim that Byteweavr "is a wholly owned subsidiary of Mind Fusion, LLC (a Texas limited liability company), which itself is a wholly owned subsidiary of Ascend Innovation Management, LLC (a Washington limited liability company.)"  *Databricks* action, Dkt. # 29.  Although Weisfield and Chummun initially caused Byteweavr to represent that it was a wholly owned subsidiary of RRA, Byteweavr has now asserted in court filings that RRA "has absolutely no interest in [Byteweavr's] case[s]," and that "RRA is merely ByteWeavr's agent for service in Texas and ***has no relation to Byteweavr***."  *Cloudera* action, Dkt. # 56 at p. 4.; *id.* Dkt. # 57 at p. 7.  Weisfield and Chummun have not explained why they caused Byteweavr to submit conflicting representations in two different courts about RRA's ownership of Byteweavr and its relationship to Mind Fusion.

25.     Upon information and belief, Weisfield and Chummun, through the Corporate Party Defendants and the Non-Party Corporate Entities, have assigned patents to Byteweavr.

26.     Ascend IP, Ascend Innovation, Mind Fusion, and Byteweavr will be collectively referred to as the Corporate Entity Defendants.

## THE NON-PARTY, CORPORATE AFFILIATES

### *Republic Registered Agent ("RRA")*

27.     Upon information and belief, RRA is a Texas limited liability company with its address located at 8115 Two Coves Dr., Austin, Texas 78730.  Upon information and belief, RRA

had or has an address located at 17350 State Highway 249 Suite 220, Houston, Texas 77064.  Upon information and belief, RRA also has an address located at 9407 NE Vancouver Mall Drive, Ste. 104, Vancouver, Washington 98662.  Upon information and belief, based on the initial Rule 7.1 disclosures filed in the *Databricks* action (*see supra* ¶ 24), James Weisfield and Riad Chummun, directly or indirectly through the Corporate Entity Defendants, exert full control over RRA. Alternatively, upon information and belief, Weisfield and Chummun do not control RRA, but claimed that it owned Byteweavr as part of their extortion scheme.

### *AI-Core Technologies ("AI-Core")*

28.     Upon information and belief, AI-Core is a Texas limited liability company with its principal place of business located at 17350 State Hwy 249, Suite 220, Houston, Texas 77064. Upon information and belief, AI-Core was formed in September of 2023.  Upon information and belief, RRA is the registered agent for AI-Core.

29.     Upon information and belief, Ascend Innovation is the managing member of AI-Core.  Upon information and belief, James Weisfield and Riad Chummun, directly or indirectly through the Corporate Entity Defendants, exert full control over AI-Core.

30.     Upon information and belief, Weisfield and Chummun, through the Corporate Party Defendants and the Non-Party Corporate Entities, have assigned patents to AI-Core.

### *Illumafinity, LLC ("Illumafinity")*

31.     Upon information and belief, Illumafinity is a Texas limited liability company with its address located at 17350 State Hwy 249, Suite 220, Houston, Texas 77064.  Upon information and belief, Illumafinity was formed in May of 2023.  Upon information and belief, RRA is the registered agent for Illumafinity.

32.     Upon information and belief, Mind Fusion is the managing member of Illumafinity. Upon information and belief, James Weisfield and Riad Chummun, directly or indirectly through the Corporate Entity Defendants including Mind Fusion, exert full control over Illumafinity.

33.     Upon information and belief, Weisfield and Chummun, through the Corporate Party Defendants and the Non-Party Corporate Entities, have assigned patents to Illumafinity.

### *Accessify, LLC ("Accessify")*

34.     Upon information and belief, Accessify is a Texas limited liability company with its address located at 17350 State Hwy 249, Suite 220, Houston, Texas 77064.  Upon information and belief, Accessify was formed in May of 2023.  Upon information and belief, RRA is the registered agent for Accessify.

35.     Upon information and belief, Mind Fusion is the managing member of Accessify. Upon information and belief, James Weisfield and Riad Chummun, directly or indirectly through the Corporate Entity Defendants, exert full control over Accessify.

36.     Upon information and belief, Weisfield and Chummun, through the Corporate Party Defendants and the Non-Party Corporate Entities, have assigned patents to Accessify.

### *Thinklogix, LLC ("Thinklogix")*

37.     Upon information and belief, Thinklogix is a Texas limited liability company with its address located at 17350 State Hwy 249, Suite 220, Houston, Texas 77064.  Upon information and belief, Thinklogix was formed in May of 2023.  Upon information and belief, RRA is the registered agent for Thinklogix.

38.     Upon information and belief, Mind Fusion is the managing member of Thinklogix. Upon information and belief, James Weisfield and Riad Chummun, directly or indirectly through the Corporate Entity Defendants including Mind Fusion, exert full control over Thinklogix.

39.     Upon information and belief, Weisfield and Chummun, through the Corporate Party Defendants and the Non-Party Corporate Entities, have assigned patents to Thinklogix.

### *Slyde Analytics LLC ("Slyde Analytics")*

40.     Upon information and belief, Slyde Analytics is a Texas limited liability company with its address located at 17350 State Hwy 249, Suite 220, Houston, Texas 77064.   Upon information and belief, Slyde Analytics was formed in October of 2022.  Upon information and belief, RRA is the registered agent for Slyde Analytics.

41.     Upon information and belief, Ascend Innovation is the managing member of Slyde Analytics.   Upon information and belief, James Weisfield and Riad Chummun, directly or indirectly through the Corporate Entity Defendants including Ascend Innovation, exert full control over Slyde Analytics.

42.     Upon information and belief, Weisfield and Chummun, through the Corporate Party Defendants and the Non-Party Corporate Entities, have assigned patents to Slyde Analytics.

### *Musicqubed Innovations, LLC ("Musicqubed")*

43.     Upon information and belief, Musicqubed is a Texas limited liability company with its address located at 17350 State Hwy 249, Suite 220, Houston, Texas 77064.  Upon information and belief, Musicqubed was formed in July of 2022.  Upon information and belief, RRA is the registered agent for Musicqubed.

44.     Upon information and belief, Ascend Innovation is the managing member of Musicqubed Innovations, LLC.   Upon information and belief, James Weisfield and Riad Chummun, directly or indirectly through the Corporate Entity Defendants including Ascend Innovation, exert full control over Musicqubed.

45.     Upon information and belief, Weisfield and Chummun, through the Corporate Party Defendants and the Non-Party Corporate Entities, have assigned patents to Musicqubed.

### *Crystal Mountain Communications, LLC ("Crystal Mountain")*

46.     Upon information and belief, Crystal Mountain is a Texas limited liability company with its address located at 17350 State Hwy 249, Suite 220, Houston, Texas 77064.   Upon information and belief, Crystal Mountain was formed in July of 2023.  Upon information and belief, RRA is the registered agent for Crystal Mountain.

47.     Upon information and belief, Mind Fusion is the managing member of Crystal Mountain.   Upon information and belief, James Weisfield and Riad Chummun, directly or indirectly through the Corporate Entity Defendants, exert full control over Crystal Mountain.

48.     Upon information and belief, Weisfield and Chummun, through the Corporate Party Defendants and the Non-Party Corporate Entities, have assigned patents to Crystal Mountain.

### *Fintegraph, LLC ("Fintegraph")*

49.     Upon information and belief, Fintegraph is a Texas limited liability company with its address located at 17350 State Hwy 249, Suite 220, Houston, Texas 77064.  Upon information

FENWICK & WEST LLP
401 UNION STREET, 5TH FLOOR
SEATTLE, WASHINGTON 98101

and belief, Fintegraph was formed in March of 2024.  Upon information and belief, RRA is the registered agent for Fintegraph.

50.     Upon information and belief, Mind Fusion is the managing member of Fintegraph. Upon information and belief, James Weisfield and Riad Chummun, directly or indirectly through the Corporate Entity Defendants, exert full control over Fintegraph.

51.     Upon information and belief, Weisfield and Chummun, through the Corporate Party Defendants and the Non-Party Corporate Entities, have assigned patents to Fitnegraph.

52.     RRA, AI-Core, Illumafinity, Accessify, Thinklogix, Slyde Analytics Musicqubed, Crystal Mountain, and Fintegraph will be collectively referred to as the Non-Party Corporate Affiliates.

## JURISDICTION AND VENUE

53.     This Court has diversity jurisdiction over Databricks' claims under 28 U.S.C. § 1332.  The requirements for diversity jurisdiction are met as Databricks is incorporated in a state (Delaware) and has its principal places of business in a state (California) that are different from the states of Washington and Texas, in which, on information and belief, the Defendants reside, are incorporated in, or have their principal places of business.  The amount in controversy also exceeds $75,000.

54.     This Court has personal jurisdiction over Defendants because they have sufficient minimum contacts with the state of Washington to satisfy the requirements of the Washington long-arm statute (RCW 4.28.185) and Constitutional due process requirements.

55.     First, as described above, each of Defendants Weisfield, Chummun, Ascend IP, Ascend Innovation, and Mind Fusion resides in, is incorporated in, or has its principal place of business in the state of Washington.

56.     Second, each Defendant transacts business within this District and in the state of Washington.  Indeed, this District and the State of Washington are the locus of Defendants' extortion scheme.  Weisfield and Chummun, as ringleaders of the extortion scheme, control and direct each of the Corporate Entity Defendants and Non-Party Corporate Affiliates from this District and the state of Washington, including by directly or indirectly causing them to enter into

patent assignments and make meritless patent infringement assertions.

57.     Specifically, Defendant Byteweavr has transacted business within this District and in Washington, including by having acquired patents from Mind Fusion.  Upon information and belief, at the time of assignment, Mind Fusion had its principal place of business in this District and in Washington.  Also, when Byteweavr first incorporated, it appointed Mind Fusion as a member of the Byteweavr LLC.  Upon information and belief, Mind Fusion was a Washington entity at the time of the time of appointment.  Furthermore, Byteweavr is a wholly owned subsidiary of Mind Fusion, which itself is a wholly owned subsidiary of Ascend Innovation, a Washington limited liability company.  Additionally, upon information and belief, one or more of Defendants Weisfield, Chummun, Ascend IP, Ascend Innovation, and Mind Fusion act as Byteweavr's agent to license the Byteweavr portfolio, and thus their acts in and contacts with the forum are properly imputed to Defendant Byteweavr for jurisdictional purposes.  Byteweavr has purposefully availed itself of the privilege of conducting business activities within this District, including with respect to the enforcement and licensing of its patent holdings through the acts of Defendants Weisfield, Chummun, Ascend IP, Ascend Innovation, and Mind Fusion.

58.     Defendants have purposefully availed themselves of the privilege of conducting business activities within this District, including by incorporating in the state of Washington, keeping their principal place of business in this District, and by engaging in conduct complained of herein from this District and the state of Washington.

59.     For the foregoing reasons, venue in this District is proper under 28 U.S.C. § 1391.

**WEISFIELD'S AND CHUMMUN'S EXTORTION SCHEME**

60.     Extorting nuisance settlements through meritless assertions of patent infringement is a widespread problem.

61.     Courts began commenting on the business practice more than two decades ago.  For example, in *eBay Inc. v. MercExchange L.L.C.,* Justice Kennedy wrote that "in many instances the nature of the patent being enforced and the economic function of the patent holder present considerations quite unlike earlier cases."  547 U.S. 388, 396 (2006).  That is because "[a]n industry has developed in which firms use patents not as a basis for producing and selling goods

1    but, instead, primarily for obtaining licensing fees." *Id.*

2         62.    In the decades since, and as more elaborate schemes have developed, the concerns

3    have only grown.  Last year, Chief Judge Colm Connolly of the U.S. District Court for the District

4    of Delaware, went so far as to refer the ringleaders of a patent license extortion scheme to the

5    Department of Justice for criminal inquiry.  *Nimitz Technologies LLC v. CNET Media, Inc.*, No.

6    21-1247, 2023 WL 8187441, at *1 (D. Del. Nov. 27, 2023).  Judge Connolly was concerned that

7    a patent plaintiff hid the real parties in interest from the Court and defendants, and "that those real

8    parties in interest may have perpetrated a fraud on the court by fraudulently conveying the patents

9    asserted in [his] Court to a shell LLC and filing fictitious patent assignments with the USPTO, all

10   designed to shield the real parties in interest from the potential liability they would otherwise face

11   by asserting in litigation the patents in question." *Id.*

12        63.    State legislatures have taken note, with nearly 30 states enacting legislation to curb

13   abusive assertions of patent infringement.  Washington is one of them.  Its legislature has expressly

14   found that "abusive patent litigation, and especially the assertion of bad faith infringement claims,

15   can harm Washington's economy."  RCW 19.350.005.  That is because a "business that receives

16   a demand asserting such claims faces the threat of expensive and protracted litigation and may

17   determine that it has no choice but to settle and to pay a licensing fee, even if the claim is

18   meritless."  *Id.*  Such claims not only "impose a significant burden on individual Washington

19   business and other entities, [but] they also undermine Washington's efforts to attract and nurture

20   information technology and knowledge-based business."  *Id.*  Rather than "invest, develop and

21   produce new products, expand, or hire new workers," targets of meritless or abusive patent

22   assertion claims are forced to expend resources fighting meritless claims.  *Id.*

23        64.    The business practices of "patent assertion entities," or "PAEs," which make

24   abusive patent demands have also caught the eye of the Federal Trade Commission.  In a 2016

25   study, the FTC described the typical business (i.e., extortion) practices such entities:

26              Litigation PAEs typically sued potential licensees and settled shortly
                afterward by entering into license agreements with defendants
27              covering small portfolios, often containing fewer than ten patents.
                The licenses typically yielded total royalties of less than $300,000.
28              According to one estimate, $300,000 approximates the lower bound
                of early-stage litigation costs of defending a patent infringement

COMPLAINT                                    - 14 -                    FENWICK & WEST LLP
CASE NO.: _____                                                   401 UNION STREET, 5TH FLOOR
                                                                       SEATTLE, WASHINGTON 98101

1

2

  suit. ***Given the relatively low dollar amounts of the licenses, the behavior of Litigation PAEs is consistent with nuisance litigation***.

3

4

5

6

  For each separate patent portfolio that they acquired, ***Litigation PAEs characteristically created a new affiliate entity, which often held ten patents or less. They generally operated with little or no working capital and relied on agreements to share future revenue with patent sellers to fund their businesses***. Litigation PAEs filed 96% of the cases in the study and accounted for 91% of the reported licenses, but only 20% of the reported revenue, or approximately $800 million.

7

8

https://www.ftc.gov/system/files/documents/reports/patent-assertion-entity-activity-ftc-study/p131203_patent_assertion_entity_activity_an_ftc_study_0.pdf (emphases added).

9

10

11

12

13

14

  65. That study further noted that "Litigation PAEs frequently entered into revenue sharing agreements with patent sellers, agreeing to pay the sellers a percentage of the revenues that the PAE would obtain through licensing as consideration for the patents," *id.* at 51, and "Litigation PAEs frequently employed contingency fee counsel." *Id.* at 52. According to the study, this "had the effect of distributing most of the proceeds from assertion to outside attorneys" and the Litigation PAEs ceding control of their patent assertion activity to outside counsel. *Id.* at 52.

15

16

  66. Weisfield and Chummun's extortion scheme is a paradigmatic example of abusive patent assertions used to extort nuisance settlements.

17

18

  67. Through the (known) entities under their control, Weisfield and Chummun have brought dozens of patent lawsuits against an equal number of defendants.

19

20

  68. Upon information and belief, Weisfield and Chummun have caused Crystal Mountain to file at least five patent infringement lawsuits.

21

22

  69. Upon information and belief, Weisfield and Chummun have caused Slyde Analytics to file at least four patent infringement lawsuits.

23

24

  70. Upon information and belief, Weisfield and Chummun have caused Musicqubed to file at least four patent infringement lawsuits.

25

26

  71. Upon information and belief, Weisfield and Chummun have caused Illumafinity to file at least three patent infringement lawsuits.

27

28

  72. Upon information and belief, Weisfield and Chummun have caused Accessify to file at least four patent infringement lawsuits.

73.     Upon information and belief, Weisfield and Chummun have caused Thinklogix to file at least two patent infringement lawsuits.

74.     Upon information and belief, Weisfield and Chummun have caused Byteweavr to file at least two patent infringement lawsuits.

75.     Upon information and belief, Weisfield and Chummun have caused AI-Core to file at least one patent infringement lawsuit.

76.     As explained in the introduction, Weisfield and Chummun intentionally seek otherwise worthless patents, bury them in layers of underfunded shell companies, and make patent infringement assertions despite knowing that the patents they assert are likely invalid and not infringed.  They do so to extort nuisance value settlements and have no intention litigating the merits of their claims.  They are comfortable doing so because they believe their shells will shield them from any adverse ramifications.

77.     Below Databricks provides a detailed outline of their scheme.

I.      **WEISFIELD AND CHUMMUN IDENTIFY EXPIRED, INVALID, AND WORTHLESS PATENTS**

78.     Upon information and belief, Weisfield and Chummun purposefully target patents for use in their extortion scheme, where such patents have little to no value.

79.     Upon information and belief, Weisfield and Chummun have acquired hundreds of patents for use in their scheme.

80.     The patents Weisfield and Chummun asserted against Databricks, through Byteweavr, are prime examples.  Byteweavr has asserted seven patents against Databricks: U.S. Patent Nos. 6,839,733 (the '733 patent); 7,949,752 (the '752 patent); 6,862,488 (the '488 patent); 6,965,897 (the '897 patent); 7,082,474 (the '474 patent); RE42,153 (the '153 patent); 8,275,827 (the '827 patent) (collectively, the "patents asserted against Databricks").

81.     Weisfield and Chummun, through Byteweavr, have also asserted these patents against at least one other entity, Cloudera Inc., in the *Cloudera* action.

82.     Six of the seven patents asserted against Databricks are expired.

83.     The '733 patent expired no later than September 6, 2020.

84.     The '752 patent expired no later than August 13, 2022.

85. The '488 patent expired no later than April 9, 2023.

86. The '897 patent expired no later than August 10, 2023.

87. The '474 patent expired no later than December 12, 2022.

88. The '153 patent expired no later than March 26, 2022.

89. Each of the six patents listed above was expired before Weisfield and Chummun caused them to be assigned to Byteweavr.  Upon information and belief, Weisfield and Chummun knew, before they acquired each patent, that each of the six patents listed above had expired or was set to expire within the calendar year.

90. All seven patents are likely invalid.  Given Weisfield's and Chummun's patent expertise, upon information and belief, Weisfield and Chummun knew each patent was likely invalid before acquiring them.

91. For example, Byteweavr has asserted claims 24-25 of the '752 patent against Databricks.  Upon information and belief, Weisfield and Chummun selected, or had a role in a selecting, the claims of the '752 and '733 patents that Weisfield and Chummun caused Byteweavr to assert against Databricks.

92. Prior owners of the '752 patent have asserted the '752 patent in litigation. *Intellectual Ventures I LLC v. VMware, Inc.*, 6-19-cv-00449 (W.D. Tex.) (July 31, 2019); *Intellectual Ventures I LLC et al v. HCC Insurance Holdings, Inc*., 6-15-cv-00660 (E.D. Tex. July 8, 2015).  The defendants in the earlier actions challenged the '752 patent, including claims 24-25, at the United States Patent and Trademark Office (USPTO) by filing petitions for *inter partes* review, explaining why the claims of the '752 patent are invalid.  *See HCC Ins. Holdings, Inc. v. Intell. Ventures I LLC*, IPR2016-01431, Paper 1 (July 13, 2016); *VMware, Inc. v. Intell. Ventures I LLC*, IPR2020-00470, Paper 2 (Feb. 10, 2020) ("*VMware inter partes* review").

93. The USPTO will not institute *inter partes* review unless the petition "shows that there is a reasonable likelihood that the petitioner would prevail" with respect to proving invalidity of at least one of the claims challenged in the petition.  35 U.S.C. § 314.

94. The USPTO made an institution decision in the *VMware inter partes* review. VMware asserted that two references, Chow and White, rendered, among others, claims 24 and 25

of the '752 patent invalid.  *Id.* at 27.  The USPTO specifically determined "that [VMware] has demonstrated a reasonable likelihood of prevailing on its assertion that claim[] 24 would have been obvious over the combination of Chow and White," *id.* at 37, and also "that [VMware] has demonstrated a reasonable likelihood of prevailing on its assertion that claim[] … 25 [] would have been obvious over the combination of Chow and White."  In other words, the USPTO determined that claims 24 and 25 of the '752 patent were likely invalid.  Upon information and belief, Weisfield and Chummun knew that claims 24 and 25 were likely invalid before they acquired the '752 patent.

95.    Upon information and belief, Weisfield and Chummun also knew that the asserted claims of the '733 patent were likely invalid before they acquired the '733 patent.  Bytewearvr has asserted claims 37-43 of the '733 patent against Databricks.  The '733 patent claims are broader than claims 24 and 25 of the '752 patent, meaning they are more easily invalidated.  *Compare* '733 patent at Claims 37-43 (disclosing allowing a network system user to create, modify, delete, and manage operation of an agent and an agent template), *with* '752 patent at claims 24, 25 (disclosing specific operational steps of agent invocation within a network system, and execution of the agent using an event handler).  With knowledge from the previous *inter partes* review determination that claims 24 and 25 of the '752 patent are likely invalid, Weisfield and Chummun knew that claims 37-43 of the '733 patent are likely invalid.

96.    For further example, Weisfield and Chummun have caused Byteweavr to assert at least claims 2 and 14 of the '827 patent against Databricks.  Byteweavr also asserted, but later withdrew, claims 8 and 20 of the '827 patent.  Upon information and belief, Weisfield and Chummun selected, or had a role in selecting, the claims of the '827 patent that Weisfield and Chummun caused Byteweavr to assert against Databricks.

97.    Prior owners of the '827 patent have asserted the '827 patent in litigation.  *Intell. Ventures I, LLC v. EMC Corp.*, No. 1-16-cv-10860 (D. Mass. May 10, 2016); *Intell. Ventures I LLC et al v. NetApp Inc.*, No. 1-16-cv-10868 (D. Mass. May 11, 2016).  The defendants in the earlier actions challenged certain claims of the '827 patent, at the USPTO by filing petitions for *inter partes* review, explaining why the claims of the '827 patent are invalid.  *See, e.g., EMC Corp.*

1 | *et al. v. Intell. Ventures I, LLC*, IPR2017-00374 ("EMC I"), Paper 5 (Dec. 13, 2016); *EMC Corp.*

2 | *et al. v. Intell. Ventures I, LLC*, IPR2017-00439 ("EMC II"), Paper 5 (Dec. 22, 2016).

3 |     98.    The USPTO instituted both *inter partes* review proceedings regarding the '827

4 | patent, and issued a final written decision in each.  In EMC I's final written decision, the USPTO

5 | concluded that claims 1, 3-9, 13, 15, 16, and 18-21 of the '827 patent are invalid.  *EMC Corp. et*

6 | *al. v. Intell. Ventures I, LLC*, IPR2017-00374, Paper 53 at 59 (June 20, 2018).  And in EMC II's

7 | final written decision, the USPTO concluded that claims 1, 3-6, 8-9, 13, 15-18, and 20 of the '827

8 | patent are invalid.  *EMC Corp. et al. v. Intell. Ventures I, LLC*, IPR2017-00439, Paper 50 (June

9 | 20, 2018).  The claims invalidated by the USPTO include claims 8 and 20, which Byteweavr

10 | asserted against Databricks at a time when such claims had already been invalidated.

11 |     99.    Asserted Claims 2 and 14 of the '827 patent were not challenged in EMC I or EMC

12 | II.  But they each respectively depend upon invalid claims 1 and 13, and neither claim adds material

13 | that would have changed the conclusions reached by the USPTO in EMC I and EMC II.  For

14 | example, claim 2, which is representative of claim 14, discloses "enabling at least one of the

15 | selected distributed devices to function as a stand-alone dedicated NAS device…." '827 patent at

16 | Claim 2.  However, as the '827 patent clearly discloses, stand-alone dedicated NAS devices were

17 | known in the art. S*ee e.g., id.* at 2:10-17 ("The NAS (Network Attached Storage) market is

18 | currently one of the fastest growing segments of the overall storage market.  **NAS devices typically**

19 | **take the form of stand-alone devices** or systems that contain their own storage, processing

20 | connectivity, and management resources." (emphasis added)); *id.* at 2:18-25.

21 |     100.    Upon information and belief, Weisfield and Chummun knew that claims 2 and 14

22 | of the '827 patent—which are not meaningfully different than the claims of the '827 patent that

23 | were invalidated—were likely invalid before they acquired the '827 patent.

24 |     101.    Upon information and belief, Weisfield and Chummun knew that each asserted

25 | claim of each patent asserted against Databricks was likely invalid before they acquired the patent.

26 |     102.    Upon information and belief, Weisfield and Chummun identified the patents

27 | asserted against Databricks for acquisition and assertion because they were likely invalid, expired,

28 | and worthless other than as part of their extortion scheme.

## II.     WEISFIELD AND CHUMMUN'S SHELL COMPANIES

103.     Weisfield and Chummun execute their extortion scheme through a multitude of shell companies, including the Corporate Entity Defendants and the Non-Party Corporate Affiliates.  The known breadth of one facet of their operations is shown below:



104.     Upon information and belief, each of the Corporate Entity Defendants and the Non-Party Corporate Affiliates was created to shield Weisfield and Chummun from any liability resulting from their assertions of patent infringement.

105.     Upon information and belief, Weisfield and Chummun bury their shells within other shells to thwart attempts to hold them liable for monetary judgments against the shells they cause to file meritless patent lawsuits.

106.     Upon information and belief, Weisfield and Chummun exert full control over all Corporate Entity Defendants and the Non-Party Corporate Affiliates.  Upon information and belief, other than Ascend IP, each Corporate Entity Defendant and Non-Party Corporate Affiliate was created to cloak the true ownership of the patents acquired as part of Weisfield's and Chummun's scheme.

107.     Upon information and belief, the only Corporate Entity Defendant with assets other

1   than worthless patents is Ascend IP.  Upon information and belief, the remaining Corporate Entity

2   Defendants have no assets, or no assets other than worthless patents acquired as part of Weisfield's

3   and Chummun's scheme.

4   108.   Upon information and belief, the Corporate Entity Defendants' daily operations are

5   not separate from each other.  Weisfield and Chummun use common phone numbers, email

6   addresses, and principal addresses amongst the entities.  For example, in a May 10, 2023, filing

7   with the Washington Secretary of State, Ascend Innovation lists under its "principal office" an

8   email address of "jim@ascendip.com", a phone number of 206-920-5080, and a physical address

9   at 7683 SE 27th St #476, Mercer Island, WA, 98040-2804, USA.  Ex. 2.  In an April 30, 2023,

10  filing with the Washington Secretary of State, Ascend IP lists under its "principal office" an email

11  address of "licensing@ascendip.com", a phone number of 206-920-5080, and a physical address

12  at 7683 SE 27th St #476, Mercer Island, WA, 98040-2804, USA.  Ex. 1.  In a February 14, 2024

13  filing with the Washington Secretary of State, Mind Fusion lists "Jim Weisfield," an email address

14  of "jim@ascendip.com," and a physical address, 7683 SE 27th St #476, Mercer Island, WA,

15  98040-2804, USA, as its return address for the filing.  Ex. 3.  On information and belief, the phone

16  numbers and emails listed in the filings are those of Weisfield and Chummun.  The Corporate

17  Entity Defendants also commonly list or recently listed RRA as their registered agent for service.

18  109.   On information and belief, neither the Corporate Entity Defendants nor the Non-

19  Party Corporate Affiliates owns any real property in Texas, Washington, or elsewhere, nor do they

20  have sufficient assets to maintain leases of real property.  For example, the Non-Party Corporate

21  Affiliates including Byteweavr share the same alleged address: 17350 State Hwy 249 Ste 220,

22  Houston, TX 77064.  This is, on information and belief, a mailbox drop controlled by corporate

23  services                company                Incfile.com.                *See*

24  https://www.bbb.org/us/tx/houston/profile/incorporation/incfilecom-llc-0915-51001358.    Mind

25  Fusion's Washington address is 9407 NE Vancouver Mall Dr. Ste. 104, # 1253 Vancouver, WA

26  98662, which, upon information and belief, is a virtual office controlled by Opus Virtual Offices.

27  *See*     https://www.opusvirtualoffices.com/virtual-office/washington/vancouver/location-1160/.

28  And its Texas address is 700 South Central Expressway, Ste. 400 PMB #130 Allen, TX 75013

which, upon information and belief, is a virtual office controlled by Alliance Virtual Offices.  *See* https://www.alliancevirtualoffices.com/virtual-office/us/tx/allen/central-expressway-south-3975. Additionally, the alleged addresses of Ascend IP and Ascend Innovation are both 7683 SE 27th St. # 476, Mercer Island, WA 98040, which, upon information and belief, are a mailbox drop controlled by The UPS Store, as seen in the storefront image below:



*See also* https://locations.theupsstore.com/wa/mercer-island/7683-se-27th-st.

110.    Upon information and belief, Ascend Innovation, Mind Fusion, Byteweavr and the Non-Party Corporate Affiliates do not have sufficient capital to operate their businesses, including patent maintenance fees and satisfying any liabilities that, for example, may incur during litigation from adverse decisions, such as court costs or awards of attorneys' fees or monetary sanctions.

111.    Upon information and belief, Ascend IP funds the other Defendant Corporate Entities' daily operations, and the daily operations of the Non-Party Corporate Affiliates.

112.    For example, according to USPTO records, Defendant Byteweavr is the assignee of at least 67 U.S. patent properties.  The USPTO maintenance fees range from $2,000 to $7,700

per patent at approximately 4-year intervals, causing great cost to Byteweavr to maintain its patent portfolio.  On information and belief, Weisfield, Chummun, the Corporate Entity Defendants, and/or the remaining Non-Party Corporate Affiliates fund the USPTO maintenance fees for Byteweavr.

113.    Upon information and belief, Weisfield, Chummun, and/or Ascend IP directed Ascend Innovation to create Mind Fusion, Byteweawvr and the Non-Party Corporate Affiliates.

114.    Upon information and belief, the Corporate Entity Defendants and the Non-Party Corporate Affiliates do not keep separate financial records.

115.    Upon information and belief, Weisfield and Chummun share in any profits derived from any successful patent actions.

## III.    DEFENDANTS' ACQUISITION AND ASSIGNMENTS OF THE EXPIRED AND INVALID PATENTS

116.    Many of the patents acquired for use in Weisfield's and Chummun's extortion scheme were previously owned by Intellectual Ventures—Weisfield's and Chummun's former employer.   Upon information and belief, the acquisition of the patents that Weisfield and Chummun have asserted against Databricks, through their corporate entities including Byteweavr, is exemplary of other of Weisfield's and Chummun's patent acquisitions.

### A.    Weisfield, Chummun, and the Other Corporate Defendants Acquire and Assign Patents in Paper Transactions That Serve No Legitimate Purpose

117.    Upon information and belief, each of the patents asserted against Databricks was obtained by Weisfield and Chummun via a patent sale agreement with Intellectual Ventures.  Upon information and belief, on February 14, 2023, Mind Fusion entered into a Patent Sale Agreement with Intellectual Ventures to acquire the '752, '733, '488 and '897 patents.  As part of the Patent Sale Agreement, Intellectual Ventures assigned the '752, '733, '488 and '897 patents to Mind Fusion.  Upon information and belief, on October 5, 2023, AI-Core entered into a Patent Sale Agreement with Intellectual Ventures to acquire the '474, '827, and '153 patents.  As part of the Patent Sale Agreement, Intellectual Ventures assigned the '474, '827, and '153 patents to AI-Core.

118.    Upon information and belief, Mind Fusion conveyed a security interest in the '752, '733, '488 and '897 patents to Intellectual Ventures, which on information and belief requires

Weisfield and Chummun, through the entities under their control, to pay Intellectual Ventures a percentage of the proceeds obtained through their extortion scheme.  Upon information and belief, AI-Core conveyed a security interest in the '474, '827, and '153 patents to Intellectual Ventures which on information and belief requires Weisfield and Chummun, through the entities under their control, to pay Intellectual Ventures a percentage of the proceeds obtained through their extortion scheme.

119.    Upon information and belief, Weisfield and Chummun, directly or through its sham entities, are obligated to seek licensing revenue as part of their agreement with Intellectual Ventures.  Upon information and belief, if Weisfield and Chummun fail to obtain revenue from the '752, '733, '488, '897, '474, '827, and '153 patents, Intellectual Ventures has the right to retake the patents.

120.    Upon information and belief, one of James Weisfield or Riad Chummun signed the security interest agreements as the "Authorized Representative" of Mind Fusion.  Upon information and belief, Riad Chummun or James Weisfield signed the security interest agreement as the "Authorized Representative" of AI-Core.

121.    Upon information and belief, on August 21, 2023, Mind Fusion assigned the '752, '733, '488 and '897 patents to Byteweavr.  Upon information and belief, Byteweavr paid no consideration to Mind Fusion as part of that assignment.  Upon information and belief, one of Weisfield or Chummun executed the assignment.

122.    Upon information and belief, on February 28, 2024, AI-Core assigned the '474, '827, and '153 patents to Byteweavr.  Upon information and belief, Byteweavr paid no consideration to AI-Core as part of that assignment.  Upon information and belief, one of Weisfield or Chummun executed the assignment.

**B.    Defendants Utilize Their Shell Entities to Hide the True Ownership of Their Patents and Shield Themselves From Liability**

123.    Upon information and belief, Weisfield and Chummun created the layered-shell company hierarchy to hide the true beneficial owners of the patents they assert—themselves—and to shield themselves from liability for any adverse judgments issued as part of their extortion scheme.

124.    Upon information and belief, there is no legitimate purpose to bury Byteweavr, for example, below two other shell companies.  Weisfield and Chummun do so only to shield themselves from liability for Byteweavr's actions—actions they cause Byteweavr to take.

125.    Upon information and belief, Weisfield and Chummun also use their layered-shell company hierarchy to obfuscate the true owners of the patents they assert.

126.    Upon information and belief, Weisfield and Chummun intentionally cause their patent-assertion entities to file false Rule 7.1 disclosures in litigation.  The Byteweavr disclosures are an example.  In both Byteweavr cases, Weisfield and Chummun caused Byteweavr to file disclosures that do not identify Weisfield or Chummun.

## IV.    DEFENDANTS' BAD FAITH ASSERTION OF THE EXPIRED AND INVALID PATENTS

127.    Upon information and belief, Weisfield and Chummun are the orchestrators of the unlawful scheme to use patents to extort nuisance settlements, and they directed the assertion of patents against Databricks.

128.    Upon information and belief, Weisfield and Chummun are personally involved in negotiating settlement discussions and making pre-litigation licensing demands relating to the patents held by the Corporate Entity Defendants and the Non-Party Corporate Affiliates.

129.    Upon information and belief, at the direction of Weisfield and Chummun and the Corporate Entity Defendants, the Non-Party Corporate Affiliates' practice is to enter into a contingency fee arrangement to prosecute sham litigations that relieves them of obligations to incur attorneys' fees and litigation expenses prior to obtaining licensing revenue. For example, Byteweavr's law firm in the Databricks action, Bragalone Olejko Saad PC markets that they "prefer alternative fee arrangements that allow [them] to share in the risk and recovery of the case." (https://bosfirm.com/faq.)  For all other liabilities, upon further information and belief, Weisfield, Chummun, the remaining Corporate Entity Defendants, and/or the Non-Party Corporate Affiliates fund all or at least portions of Byteweavr's operations and pool their resources to support their enterprise of asserting bad faith, meritless, sham patent infringement claims without liability.

130.    For example, Weisfield and Chummun have caused Byteweavr to assert claim 11 of the '488 patent against Databricks.  The '488 patent discloses using a computer to automatically

create validation protocols and use them to automatically validate equipment and/or processes for use in a pharmaceutical and/or biotechnology manufacturing facility.  '488 patent at 2:60-3:8; Claim 11.

131.    Claim 11 of the '488 patent recites (emphasis added):

11. In a computing environment a method to automate the validation of equipment and/or processes for ***use in a pharmaceutical and/or bio-technology manufacturing facility*** comprising the steps of:

providing a user interface capable of accepting and/or displaying data representative of validation processing and/or validation workflow management information, wherein said user interface has at least one dialog box populated with validation processing and/or validation workflow management information;

providing a validation processing engine, said validation processing engine comprising at least one processing rule that operates on validation processing information selected through said user interface to produce validation protocol information.

132.    Notwithstanding the patents' requirement for computer-automated validation of processes or equipment **used in a pharmaceutical or biotechnology manufacturing facility**, Defendants asserted, through Byteweavr, that Databricks, a data intelligence company, infringes the '488 patent.  In their assertions, Defendants identify no pharmaceutical or biotechnology manufacturing facility owned by Databricks, or any evidence that Databricks' platforms are used for any such purpose.

133.    Upon information and belief, Weisfield and Chummun selected and caused Byteweavr to assert the '488 patent against Databricks despite knowing the assertions lacked merit.

134.    As another example, Weisfield and Chummun have caused Byteweavr to assert claims 24-25 of the '752 patent and claims 37-43 of the '733 patent.  The '752 and '733 patents disclose software agents that perform basic tasks for a user.  The patents' shared disclosure describes exemplary tasks the agents can perform, including "answering telephone calls, taking voice mail messages, placing telephone calls, notifying the user of recently received messages (voice mail and/or email), delivering messages, setting up meetings/appointments, gathering information, negotiating deals, transacting electronic commerce, etc." '733 patent at 8:64-9:3.  In other words, the patents and their claims are directed to automating ministerial tasks using software-based agents.  This makes sense given the patents claim priority to applications filed in 1998.

135.    Notwithstanding the ministerial tasks disclosed by the patents, Weisfield, Chummun, and the Corporate Entity Defendants have asserted, through Byteweavr, that Databricks infringes the claims of the '733 and '752 patents through machine learning technology that Databricks launched in 2018—more than 20 years after the patents' disclosure was drafted. In their assertions, Defendants identify no software agents for performing such ministerial tasks owned by Databricks, or any evidence that Databricks' platforms are used for any such purpose.

136.    Weisfield, Chummun, and the Corporate Entity Defendants have asserted, through Byteweavr, meritless and otherwise nebulous, vague, and ambiguous, infringement theories against Databricks.

137.    Further, Weisfield and Chummun have asserted, through the Corporate Entity Defendants and Non-Party Corporate Affiliates, patents against dozens of other defendants.  Upon information and belief, the infringement theories asserted against those defendants are similarly meritless, and otherwise nebulous, vague, and ambiguous.

138.    Upon information and belief, Weisfield and Chummun selected, or had a role in a selecting, the patents that Weisfield and Chummun caused Byteweavr to assert against Databricks. Upon information and belief, Weisfield and Chummun selected and caused Byteweavr to assert the patents asserted against Databricks despite knowing their assertions lacked merit.

### COUNT I – VIOLATION OF RCW 19.86 *et. seq.*

139.    Databricks re-alleges and incorporates each of the allegations in paragraphs 1-138 above as fully set forth herein.

140.    Defendants have engaged in unfair and deceptive acts or practices.  Defendants, through their network of shell companies, deceive the public and the courts about who owns and controls the patents they assert, who are the beneficiaries of any income obtained through their monetization efforts, and who is using the court system.  Defendants' corporate structure scheme violates their duty to prosecute any actions in the name of the real parties in interest as required by Fed. R. Civ. P. 17.  Moreover, as the Washington state legislature has expressly recognized, meritless assertions of patent infringement violate the public interest.   RCW 19.350.005. Defendants have made bad faith assertions of patent infringement, by knowingly asserting invalid

patents and knowingly making assertions of infringement that lack merit. Defendants have asserted patents in bad faith, knowing such patents (most of which are expired) have little or no value, in an attempt to extort nuisance settlements. Defendants' scheme amplifies that harm by cloaking the real parties in interest and abusing the corporate form to insulate those parties from any adverse judgments resulting from their scheme.

141. Defendants have engaged in unfair and deceptive acts or practices while conducting trade or commerce. Weisfield's and Chummun's principal business, Ascend IP, facilitates all facets of their extortion scheme. They boast about providing "a seamless acquisition process guided by experts with the technical skills, transactional savvy and industry connections to maximize the value of your intellectual property holdings." https://ascendip.com/#282595. In other words, targeting worthless patents is part of their business strategy. Acquiring patents for little to no money but promising to pay the original patent owners proceeds from their extortion scheme is also part of their business strategy: "Our acquisition structures are flexible, ranging from all-cash transactions to revenue-sharing arrangements and owner or investor-funded deals." *Id.* Weisfield and Chummun claim to "transform patents into lucrative assets," including by "navigat[ing] the intricate terrain of litigation with expertise and precision," and "crafting and implementing enforcement programs." *Id.* In other words, Weisfield and Chummun, through Ascend IP, cause Ascend Innovation and their other shell entities to file meritless patent lawsuits. And critically, obfuscating patent ownership and evading liability through abusing the corporate form are part of Weisfield's and Chummun's business practices: "Ascend is dedicated to advising clients on strategies that mitigate risk exposure while maximizing the probability of success." *Id.*

142. Defendants' unfair and deceptive acts or practices are injurious to the public. As explained above, Defendants' actions violate their duties under the Federal Rules of Civil Procedure to disclose the real parties in interest and disclose to the public and the courts the correct parent entities and real parties in interest. Further, as noted, Defendants' extortion scheme magnifies the Washington legislatures concerns about meritless accusations of patent infringement. Finally, Defendants' extortion scheme has injured other persons, had the capacity to injure other persons, and has the capacity to injure other persons. As described above, through

their various entities, Weisfield and Chummun have filed over two dozen lawsuits against various entities.  Weisfield and Chummun have even caused Byteweavr to file a lawsuit nearly identical to that filed against Databricks against Cloudera.  In other words, Cloudera has been harmed in "exactly the same fashion" as Databricks.  Upon information and belief, Weisfield and Chummun plan to and will continue to acquire worthless patents, hide their ownership in shell companies, and seek to avoid liability for filing meritless patent lawsuits.

143.    Databricks has been and is being harmed by Defendants' ongoing violations of the Washington State Consumer Protection Act, including but not limited to expending resources, including legal fees and costs to defend against Defendants' meritless lawsuit filed through their Byteweavr entity.  As a target of Defendants' extortion scheme, Databricks has to defend itself in court or pay to license Byteweavr's (i.e., Defendants') invalid patents, even though they are not infringed and were asserted in bad faith.  And to the extent Databricks successfully obtains a judgment against Byteweavr, Databricks will be forced to pierce through multiple sham entities to collect from the real parties in interest.  But for Defendants' extortion scheme, Databricks would not have suffered this injury.

144.    Databricks' claim is not preempted or precluded by the *Noerr-Pennington* doctrine. The foregoing allegations demonstrate that Defendants' actions were made in bad faith. Defendants have knowingly created a scheme to extort nuisance settlements through patent assertions made without regard to the merits of such assertions, while also insulating themselves from any liability for such assertions. Such actions constitute bad faith.  Further, the foregoing allegations demonstrate a pattern or practice of successive patent infringement assertions by Defendants, which were made without regard to the merits of such assertions, and therefore constitute bad faith.  To the extent that the Court finds that the test applicable to a single proceeding or assertion is applicable (which it is not), the foregoing allegations demonstrate that Defendants made assertions of patent infringement that were, in the first place, objectively baseless, and in the second place, made in subjective bad faith.  Specifically with respect to objective baselessness, for example, Defendants asserted patent claims that the USPTO found to be likely invalid and asserted patent claims that are the same as or not meaningfully different than patent claims that have already

been invalidated by the USPTO.  Defendants also made infringement assertions that lack any merit.  Specifically with respect to subjective bad faith, for example, Defendants have taken actions that interfere with Databricks' business, including by forcing Databricks to defend itself in court with respect to invalid patents with little to no value, even though they are not infringed and were asserted in bad faith, while also attempting to deprive Databricks of any recourse through the use of a corporate shell scheme consisting of multiple sham entities.

## COUNT II – CIVIL CONSPIRACY

145.    Databricks re-alleges and incorporates each of the allegations in paragraphs 1-144 above as fully set forth herein.

146.    Defendants conspired to implement their extortion scheme.  Weisfield and Chummun, together, exert full control over the Corporate Entity Defendants and the Non-Party, Corporate Entities.  Weisfield and Chummun caused each entity to enter into transactions with one another and third parties to obtain the patents, and then to assert them.  Upon information and belief, Defendants have entered into agreements with one another, at the direction of Weisfield and Chummun, to implement their extortion scheme.

147.    Databricks has been harmed by Defendants' conspiracy, including but not limited to expending resources, including legal fees and costs to defend against Defendants' meritless lawsuit filed through their Byteweavr entity.

## PRAYER FOR RELIEF

Databricks requests the following relief:

a.      Damages, treble damages, attorneys' fees, and costs in excess of $75,000 pursuant to RCW 19.86.090 for Defendants' violation of the Washington State Consumer Protection Act;

b.      Damages and attorneys' fees in excess of $75,000 for harm suffered as a result of Defendants' unlawful conspiracy.

c.      An award of costs to Databricks; and

d.      Such other relief as the Court shall deem just and proper.

## JURY DEMAND

Databricks hereby requests a trial by jury on all issues so triable.

COMPLAINT                                    - 30 -
CASE NO.: _____

1  Dated:    September 6, 2024                    Respectfully submitted,

2                                                 FENWICK & WEST LLP

3

4                                                 By: /s/ Jessica M. Kaempf

5                                                      Michael J. Sacksteder*
                                                       555 California Street, 12th Floor
6                                                      San Francisco, California 94104
                                                       Telephone:       415.875.2300
7                                                      Facsimile:       415.281.1350
                                                       Email:    msacksteder@fenwick.com
8
                                                       Jessica M. Kaempf
9                                                      Jonathan G. Tamimi
                                                       401 Union Street, 5th Floor
10                                                     Seattle, WA  98101
                                                       Telephone:  206.389.4510
11                                                     Facsimile:   206.389.4511
                                                       Email:       jkaempf@fenwick.com
12                                                                   jtamimi@fenwick.com

13                                                     *Admission Pro Hac Vice Forthcoming

14
                                                       *Attorneys for Plaintiff Databricks, Inc.*
15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT                                   - 31 -                    FENWICK & WEST LLP
CASE NO.: _____                                                 401 UNION STREET, 5TH FLOOR
                                                                     SEATTLE, WASHINGTON 98101