THE HONORABLE JAMES L. ROBART

1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9  DATABRICKS, INC.,

10        Plaintiff,

11     v.

12  JAMES WEISFIELD; RIAD CHUMMUN;
    ASCEND IP, LLC; ASCEND INNOVATION
13  MANAGEMENT, LLC; MIND FUSION,
    LLC; and BYTEWEAVR, LLC,
14
          Defendants.
15

Case No.: 2:24-cv-01417-JLR

**PLAINTIFF DATABRICKS, INC.'S
OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS, OR
ALTERNATIVELY TO TRANSFER OR
STAY**

**Note on Motion Calendar:**
**December 20, 2024**

**JURY TRIAL DEMANDED**

16
17
18
19
20
21
22
23
24
25
26
27
28

DATABRICKS' OPPOSITION TO
MOTION TO DISMISS
Case No. 2:24-CV-01417-JLR

FENWICK & WEST LLP
401 UNION STREET, 5TH FLOOR
SEATTLE, WASHINGTON 98101
TELEPHONE 206.389.4510
FACSIMILE 206.389.4511

# TABLE OF CONTENTS

                                                                                                      **Page**

I.      INTRODUCTION ...........................................................................................................1

II.     BACKGROUND ...........................................................................................................2

        A.      Databricks is a World Leader in Data and Artificial Intelligence. ........................2

        B.      Weisfield and Chummun Monetize Patents Through Their Washington-
                Based Businesses. ..................................................................................................3

        C.      Databricks Alleges that Defendants Conspired to Engage in Acts of Unfair
                Competition in Violation of the Washington State CPA. ......................................4

                1.      Weisfield and Chummun seek and acquire low-value patents. .................5

                2.      Weisfield and Chummun create a byzantine corporation structure
                        to shield themselves from liability. ..........................................................6

                3.      Weisfield and Chummun conduct no diligence, or ignore the
                        results of their diligence, and assert patents in bad faith. ...........................7

III.    ARGUMENT ................................................................................................................8

        A.      Defendants' Request to Dismiss Databricks' Patent Troll Prevention Act
                Claim Should be Denied as Moot Because Databricks Asserts no Such
                Claim. .....................................................................................................................8

        B.      Defendants' *Noerr-Pennington* and Preemption Arguments Fail. ........................9

                1.      *Noerr-Pennington* protects only legitimate petitioning efforts, and
                        Databricks has adequately pleaded all three sham exceptions....................9

                        a.      Databricks has sufficiently alleged both objective
                                baselessness and subjective bad faith related to Defendants'
                                litigation against Databricks. .......................................................10

                                (1)      Databricks has sufficiently alleged that Defendants'
                                         assertions are objectively baseless. ...................................10

                                (2)      Databricks has sufficiently alleged that Defendants
                                         made patent assertions in subjective bad faith. ..................13

                        b.      Defendants are serial petitioners that file lawsuits in
                                subjective bad faith. .....................................................................14

DATABRICKS' OPPOSITION TO
MOTION TO DISMISS                           - i -
Case No. 2:24-CV-01417-JLR

FENWICK & WEST LLP
401 UNION STREET, 5TH FLOOR
SEATTLE, WASHINGTON  98101
TELEPHONE  206.389.4510
FACSIMILE  206.389.4511

1

2

**TABLE OF CONTENTS**
**(CONTINUED)**

3

Page

4

       c.     Defendants do not dispute that they intentionally misrepresented their corporate structure in legal

5

           proceedings. ...................................................................................15

6

       d.     Defendants' preemption arguments fail for the same reasons..........................................................................................16

7

8

     2.    *Noerr-Pennington* does not immunize Defendants' scheme simply because Defendants file lawsuits. ...............................................17

9

  C.     Databricks Adequately Alleged its CPA Claim...................................................18

10

     1.    Databricks adequately alleged unfair or deceptive acts occurring in

11

         trade or commerce that affect Washingtonians.........................................18

12

     2.    Databricks has standing to bring its CPA claim. .....................................21

13

  D.     As this Case Shares no Overlapping Claims with Byteweavr's Patent Suit, the Court Should not Stay or Transfer it. ...............................................................22

14

IV.     CONCLUSION...............................................................................................................23

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DATABRICKS' OPPOSITION TO
MOTION TO DISMISS       - ii -
Case No. 2:24-CV-01417-JLR

FENWICK & WEST LLP
401 UNION STREET, 5TH FLOOR
SEATTLE, WASHINGTON 98101
TELEPHONE 206.389.4510
FACSIMILE 206.389.4511

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*800 Adept, Inc. v. Murex Sec., Ltd.*,
  539 F.3d 1354 (Fed. Cir. 2008)........................................................................................ *passim*

*Alt. Electrodes, LLC v. Empi, Inc.*,
  597 F. Supp. 2d 322 (E.D.N.Y. 2009) ....................................................................................11

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..................................................................................................................8

*B&G Foods N. Am., Inc. v. Embry*,
  29 F.4th 527 (2022)..............................................................................................13, 14, 15, 18

*B&G Foods N. Am., Inc. v. Embry*,
  No. 2:20-CV-00526-KJM-DB, 2023 WL 3751991 (E.D. Cal. June 1, 2023) ........................15

*Cal. Motor Transp. Co. v. Trucking Unlimited*,
  404 U.S. 508 (1972)................................................................................................................14

*City of Almaty v. Khrapunov*,
  956 F.3d 1129 (9th Cir. 2020) .................................................................................................8

*City of Columbia v. Omni Outdoor Advert., Inc.*,
  499 U.S. 365 (1991)..................................................................................................................9

*Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.*,
  690 F.2d 1240 (9th Cir. 1982) .............................................................................................9, 17

*Commil USA, LLC v. Cisco Sys., Inc.*,
  575 U.S. 632 (2015)................................................................................................................11

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*,
  776 F.3d 1343 (Fed. Cir. 2014)........................................................................................14, 15

*Dwyer v. J.I. Kislak Mortgage Corp.*,
  13 P.3d 240 (Wash. Ct. App. 2000) ......................................................................................21

*Ford v. Wood*,
  No. 1:23-CV-01358, 2024 WL 4114264 (W.D. La. Aug. 22, 2024)........................................8

*Futurewei Techs., Inc. v. Acacia Rsch. Corp.*,
  737 F.3d 704 (Fed. Cir. 2013).................................................................................................22

*Globetrotter Software, Inc. v. Elan Comput. Grp., Inc.*,
  362 F.3d 1367 (Fed. Cir. 2004)...............................................................................................10

DATABRICKS' OPPOSITION TO
MOTION TO DISMISS                - iii -
Case No. 2:24-CV-01417-JLR

FENWICK & WEST LLP
401 UNION STREET, 5TH FLOOR
SEATTLE, WASHINGTON  98101
TELEPHONE 206.389.4510
FACSIMILE 206.389.4511

1

**TABLE OF AUTHORITIES**
**(CONTINUED)**

2

**Page(s)**

3

*Greenberg v. Amazon.com, Inc.*,
  553 P.3d 626 (Wash. 2024)..................................................................................................18

4

5

*Hakak v. Geffen*,
  No. 2:22-CV-09287-AB-PD, 2023 WL 4681385 (C.D. Cal. June 28, 2023)...................14, 15

6

7

*Hogan v. Unum Life Ins. Co. of Am.*,
  81 F. Supp. 3d 1016 (W.D. Wash. 2015)..............................................................................20

8

*Hynix Semiconductor Inc. v. Rambus, Inc.*,
  No. CV-0020905 RMW, 2006 WL 1883353 (N.D. Cal. July 7, 2006)..................................17

9

10

*In re Telebrands Corp.*,
  773 F. App'x 600 (Fed. Cir. 2016) ...................................................................................22, 23

11

*Int'l Motor Contest Ass'n, Inc. v. Staley*,
  434 F. Supp. 2d 650 (N.D. Iowa 2006)..................................................................................17

12

13

*Intell. Ventures I LLC v. EMC Corp.*,
  786 F. App'x 1021 (Fed. Cir. 2019) ...........................................................................5, 7, 11

14

15

*Inventor Holdings, LLC v. Bed Bath & Beyond, Inc.*,
  876 F.3d 1372 (Fed. Cir. 2017)..............................................................................................12

16

*Johnson v. Johnson*,
  No. 2:05-CV-749 TS, 2008 WL 4533975 (D. Utah Sept. 29, 2008)........................................8

17

18

*Kearney v. Foley & Lardner, LLP*,
  590 F.3d 638 (9th Cir. 2009) .................................................................................................13

19

20

*Kimberly-Clark Worldwide Inc. v. First Quality Baby Prods. LLC*,
  No. 14-CV-1466, 2015 WL 1582368 (E.D. Wis. Apr. 9, 2015)............................................12

21

22

*Kosovan v. Omni Ins. Co.*,
  19 Wash. App. 2d 668, 700 (2021) ........................................................................................21

23

*Lyon v. Caterpillar, Inc.*,
  194 F.R.D. 206 (E.D. Pa. 2000)..............................................................................................21

24

25

*Manistee Town Center v. City of Glendale*,
  227 F.3d 1090 (9th Cir. 2000) .........................................................................................14, 15

26

*Michael v. Mosquera-Lacy*,
  200 P.3d 695 (Wash. 2009)....................................................................................................20

27

28

DATABRICKS' OPPOSITION TO
MOTION TO DISMISS
Case No. 2:24-CV-01417-JLR

- iv -

FENWICK & WEST LLP
401 UNION STREET, 5TH FLOOR
SEATTLE, WASHINGTON 98101
TELEPHONE 206.389.4510
FACSIMILE 206.389.4511

1

## TABLE OF AUTHORITIES
### (CONTINUED)

2

Page(s)

3

*Nelson v. Flagstar Bank FSB*,
    No. C12–2012, 2013 WL 474697 (W.D. Wash. Feb. 6, 2013) ..............................................18

4

5

*Panag v. Farmers Ins. Co. of Wash.*,
    204 P.3d 885 (2009).......................................................................................................................18

6

*Pro. Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.*,
    508 U.S. 49 (1993).........................................................................................................................10

7

8

*Relevant Group, LLC v. Nourmand*,
    116 F.4th 917 (9th Cir. 2024) ................................................................................9, 10, 14, 15

9

10

*Schnall v. AT&T Wireless Servs., Inc.*,
    168 Wn.2d 125, 225 P.3d 929 (2010).......................................................................................20

11

*Schnall v. AT&T Wireless Servs., Inc.*,
    171 Wn.2d 260, 259 P.3d 129 (2011).................................................................................20, 21

12

13

*Shelcore, Inc. v. Durham Indus., Inc.*,
    745 F.2d 621 (Fed. Cir. 1984).....................................................................................................11

14

15

*Source Vagabond Sys. Ltd. v. Hydrapak, Inc.*,
    753 F.3d 1291 (Fed. Cir. 2014)...................................................................................................12

16

*Taurus IP, LLC v. DaimlerChrysler Corp.*,
    726 F.3d 1306 (Fed. Cir. 2013)...................................................................................................12

17

18

*Teva Pharms. USA, Inc. v. Abbott Lab'ys*,
    580 F. Supp. 2d 345 (D. Del. 2008)...........................................................................................12

19

20

*Thornell v. Seattle Serv. Bureau, Inc.*,
    363 P.3d 587 (Wash. 2015).................................................................................................20, 21

21

*USS-POSCO Indus. v. Contra Costa Cnty. Bldg. & Const. Trades Counsel, AFL-CIO*,
    31 F.3d 800 (9th Cir. 1994) ..................................................................................................14, 15

22

23

*Venetian Casino Resort, L.L.C. v. N.L.R.B.*,
    484 F.3d 601 (D.C. Cir. 2007) ....................................................................................................18

24

25

*Washington v. Landmark Tech. A, LLC*,
    637 F. Supp. 3d 1154 (W.D. Wash. 2022).................................................................................16

26

*Waugh Chapel S., LLC v. United Food & Com. Workers Union Loc. 27*,
    728 F.3d 354 (4th Cir. 2013) ......................................................................................................15

27

28

DATABRICKS' OPPOSITION TO
MOTION TO DISMISS                                              - v -
Case No. 2:24-CV-01417-JLR

FENWICK & WEST LLP
401 UNION STREET, 5ᵀᴴ FLOOR
SEATTLE, WASHINGTON  98101
TELEPHONE 206.389.4510
FACSIMILE 206.389.4511

## <u>TABLE OF AUTHORITIES</u>
### (CONTINUED)

<b>Page(s)</b>

*Zero Techs., LLC v. Clorox Co.*,
    713 F. Supp. 3d 40 (E.D. Pa. 2024) ........................................................................................23

**STATUTES**

35 U.S.C. § 286 ..................................................................................................................................6

RCW 19.86 ........................................................................................................................18, 19, 20

Washington Consumer Protection Act ..............................................................................................1

Washington State Patent Troll Prevention Act ................................................................................1

**OTHER AUTHORITIES**

Fed. R. Civ. P. 11 ................................................................................................................4, 12, 15, 16

Fed. R. Civ. P. 12(b)(6) ....................................................................................................................8

LCR 7.1 ..............................................................................................................................................4

DATABRICKS' OPPOSITION TO
MOTION TO DISMISS
Case No. 2:24-CV-01417-JLR

- vi -

FENWICK & WEST LLP
401 UNION STREET, 5TH FLOOR
SEATTLE, WASHINGTON 98101
TELEPHONE 206.389.4510
FACSIMILE 206.389.4511

## I.   **INTRODUCTION**

As alleged in Databricks' complaint, James Weisfield and Riad Chummun—through the corporate Defendants under their control—have engaged in a civil conspiracy to commit acts of unfair competition in violation of the Washington Consumer Protection Act (CPA).  From their base of operations in Washington state, Weisfield and Chummun seek and acquire low-value patents—i.e., patents that are likely invalid or have already expired—bury them within a byzantine corporate structure full of underfunded shell companies, and then wield those patents against litigation targets without regard to the merits of the case.  Rather than seek a judgment of infringement, validity, and damages, Weisfield's and Chummun's business is to extort settlements by leveraging the exorbitant cost patent defendants must incur to fight even the most specious allegations.  And if any of Weisfield's and Chummun's targets defend themselves and receives a fee award or sanctions against Weisfield's and Chummun's entities, Weisfield and Chummun can simply abuse the corporate form they created to leave their underfunded and assetless shells on the hook for any liability.  In short, Weisfield and Chummun designed their scheme to allow them to collect settlements while escaping liability for their bad-faith patent assertions.

Databricks' complaint identified twenty-five patent lawsuits Weisfield and Chummun filed in the last two years alone.  As of this filing, Weisfield and Chummun have settled, dismissed, or sought a stay pending settlement in 20 of those lawsuits.  None of Weisfield's and Chummun's cases has reached trial, summary judgment, or even a *Markman* ruling.  And Weisfield and Chummun have mooted eight motions to dismiss by settling or dismissing their claims before any ruling on the merits.  As these outcomes show, rather than legitimately petitioning the government for relief, Weisfield and Chummun misuse the courts as a tool in their scheme.

Here, Defendants seek dismissal, stay, or a transfer of Databricks' suit.  They first ask this Court to dismiss a claim under the Washington State Patent Troll Prevention Act (PTPA).  The Court should deny that request as moot because Databricks makes no such claim.

Next, Defendants seek dismissal of Databricks' CPA and civil conspiracy claims.  Their primary argument is that the *Noerr-Pennington* doctrine immunizes their scheme from scrutiny.  But *Noerr-Pennington* protects only legitimate litigation efforts, not sham lawsuits such as those

DATABRICKS' OPPOSITION TO
MOTION TO DISMISS                         - 1 -
Case No. 2:24-CV-01417-JLR

FENWICK & WEST LLP
401 UNION STREET, 5ᵀᴴ FLOOR
SEATTLE, WASHINGTON  98101
TELEPHONE  206.389.4510
FACSIMILE  206.389.4511

filed by Weisfield's and Chummun's corporate shells.   And Databricks has adequately pleaded all three sham exceptions recognized by the Ninth Circuit: (1) objective baselessness and subjective bad faith; (2) serial petitioning; (3) and intentional misrepresentations by Defendants during litigation.   Given Databricks' well-pleaded allegations, the Court should address any question about whether *Noerr-Pennington* shields Defendants' conduct on a full record at summary judgment or at trial.   Finally, even if Defendants' *lawsuits* are protected by *Noerr-Pennington*, that does not insulate their overall scheme.  Courts have long recognized that *Noerr-Pennington* does not immunize an unlawful series of actions—like those at issue here—simply because litigation is employed as a tool in furtherance of a larger scheme.

Defendants' remaining arguments also lack merit.  Their contention that federal patent law preempts Databricks' claims fails for the same reason that *Noerr-Pennington* does not immunize their conduct.  Defendants' standing and other pleading arguments are contrary to controlling authority, mischaracterize Databricks' allegations, or ignore undisputed facts.  And their first-to-file arguments fail to recognize that this case has no overlap with the legal issues in the co-pending patent dispute in the Eastern District of Texas, so there is no basis for a stay or transfer.

In sum, Defendants provide this Court no basis to dismiss, stay, or transfer Databricks' claims.

## II. BACKGROUND

### A. Databricks is a World Leader in Data and Artificial Intelligence.

Since its founding in 2013, Databricks has transformed the way its customers store, share, analyze, model, and monetize their data.  (Complaint ¶¶ 3–5.)  Databricks' customers use its core product, the cloud-based Data Intelligence Platform, to build, deploy, share, and maintain enterprise-grade data, analytics, and artificial intelligence solutions at scale.  (*Id.* ¶¶ 6–7.)

Databricks' partners and customers include some of Washington's most notable companies.  Databricks' Data Intelligence Platform operates in conjunction with the infrastructure and services of major Washington-based cloud computing companies such as Amazon Web Services and Microsoft Azure.  (*Id.* ¶¶ 6 n.3, 7 n.5.)  Its Washington-based customers include,

DATABRICKS' OPPOSITION TO
MOTION TO DISMISS                                          - 2 -
Case No. 2:24-CV-01417-JLR

FENWICK & WEST LLP
401 UNION STREET, 5TH FLOOR
SEATTLE, WASHINGTON 98101
TELEPHONE 206.389.4510
FACSIMILE 206.389.4511

among others, T-Mobile, the City of Seattle, Coastal Community Bank, Accolade, and Washington State Health Care Authority.  (*Id.* ¶ 7 n.5 (link to Databricks' customer webpage).)

## B. Weisfield and Chummun Monetize Patents Through Their Washington-Based Businesses.

James Weisfield and Riad Chummun are two former employees of patent-monetization company Intellectual Ventures.  (*Id.* ¶ 11.)  They now provide consulting services to others who seek to monetize their patent portfolios and—through at least the scheme at issue in this lawsuit—directly monetize patents themselves.  (*Id.* ¶ 12.)  Weisfield and Chummun are familiar with patent analysis, valuation, and litigation and boast that their four combined decades in the field allow them to "ingeniously monetize[e]" patents, including through "strategies that mitigate risk exposure."  (*Id.* ¶¶ 11–12, 141.)

Weisfield and Chummun provide consulting services through Ascend IP, their business located on Mercer Island, Washington.  (*Id.* ¶¶ 17, 108.)  Weisfield and Chummun monetize their own patents through Ascend Innovation, a Washington-based, assetless shell company they control.  (*Id.* ¶ 106.)  But Weisfield and Chummun do not make any assertions through that entity.  Instead, they have created a sprawling network of other assetless shell entities, including the other named Defendants here: Mind Fusion and Byteweavr.  (*Id.* ¶¶ 103–115.)[1]



[1] Defendants complain that Databricks made allegations about their corporate structure mostly

DATABRICKS' OPPOSITION TO
MOTION TO DISMISS                          - 3 -
Case No. 2:24-CV-01417-JLR

FENWICK & WEST LLP
401 UNION STREET, 5TH FLOOR
SEATTLE, WASHINGTON 98101
TELEPHONE 206.389.4510
FACSIMILE 206.389.4511

While Databricks was able to construct the chart above through publicly available records, the full breadth and detail of Weisfield's and Chummun's shell network remains unclear. For example, Weisfield and Chummun have made conflicting representations about their shell network to at least three district courts. (*Id.* ¶ 24; Dkt. 20.) At times, they have represented—subject to their duties under Federal Rule of Civil Procedure 11(b)(3)—that another entity, Registered Republic Agent (RRA) owns Mind Fusion (the owner of Byteweavr). (Complaint ¶ 24.) Yet at other times, they have argued—again subject to the requirements of Rule 11—that RRA "has absolutely no interest in [Byteweavr's] case[s]," and that "RRA is merely ByteWeavr's agent for service in Texas and has no relation to Byteweavr." (*Id.*) Weisfield and Chummun have never explained their inconsistent statements, and do not contest for purposes of their motion that they purposefully misrepresented the ownership structure of the companies under their control to further their scheme by making any recovery against them more difficult, (*id.* ¶¶ 24, 125-126.)

## C.    Databricks Alleges that Defendants Conspired to Engage in Acts of Unfair Competition in Violation of the Washington State CPA.

Databricks alleges only two claims: (1) that Defendants violated the CPA and (2) that Defendants engaged in a civil conspiracy in furtherance of that goal. (*Id.* ¶¶ 139–147 (Count I and Count II).) Databricks alleges that Defendants have orchestrated a scheme to acquire low-value patents and assert those patents to obtain nuisance value settlements from innovative companies, such as Databricks, and shield themselves from liability through a multi-tier network of assetless shell companies. (*Id.* ¶¶ 103–126.)

Databricks does not seek a declaratory judgment that it does not infringe any patents or that any patents are invalid or unenforceable. (*See generally* Complaint.)[2] Nor has Databricks alleged a violation of the PTPA. (*Id.*)

---

on "information and belief." (Mot. at 1-2.) Yet, Defendants' Rule 7.1 Disclosure partially confirms Databricks' allegations, (Dkt. 20), and Defendants do not contest Databricks' allegations about their corporate structure, (Complaint ¶¶ 76, 103-115, 123-126), that the companies within that structure have no assets other than low-value patents, (*id.* ¶¶ 76, 107, 109-110), or even that these shell companies are merely the alter egos of Weisfield and Chummun, (*id.* ¶¶ 76, 103-126).

[2] Likewise, Defendants have made no assertions of patent infringement here.

DATABRICKS' OPPOSITION TO
MOTION TO DISMISS                    - 4 -
Case No. 2:24-CV-01417-JLR

FENWICK & WEST LLP
401 UNION STREET, 5TH FLOOR
SEATTLE, WASHINGTON  98101
TELEPHONE  206.389.4510
FACSIMILE  206.389.4511

1

## 1.    Weisfield and Chummun seek and acquire low-value patents.

2      Weisfield and Chummun begin by targeting low-value patents for acquisition.  They

3  intentionally seek patents that are likely invalid or expired and therefore have a limited window of

4  time for which Weisfield and Chummun can seek damages.  (*Id.* ¶¶ 78-79.)  This allows Weisfield

5  and Chummun to acquire these patents by paying little or nothing out of pocket, in exchange for

6  compensating the patents' prior owners with a percentage of any settlements they receive.  (*Id.* ¶

7  141.)

8      The patents Weisfield and Chummun asserted against Databricks (through Byteweavr) are

9  exemplary.  Weisfield and Chummun acquired U.S. Patent No. 8,275,827 (the '827 patent) from

10  Intellectual Ventures.  (*Id.* ¶ 117.)  But before Weisfield and Chummun acquired the '827 patent,

11  the United States Patent and Trademark Office (PTO) invalidated almost every claim of that patent

12  in two *inter partes* review (IPR) proceedings.  (*Id.* ¶¶ 97–98.)  The Federal Circuit affirmed the

13  decisions in both IPRs.  *Intell. Ventures I LLC v. EMC Corp.*, 786 F. App'x 1021 (Fed. Cir. 2019).

14  The only reason any claims remain is because Intellectual Ventures previously determined they

15  were not worth asserting in litigation, and those claims therefore went unchallenged in the IPRs.

16  (Complaint ¶ 99.)

17      Similarly, Weisfield and Chummun acquired U.S. Patent No. 7,949,752 (the '752 patent)

18  from Intellectual Ventures with knowledge that the claims it would eventually assert against

19  Databricks are likely invalid.  (*Id.* ¶¶ 90–94, 117.)  Like the '827 patent, the PTO evaluated the

20  patentability of the '752 patent in an IPR proceeding.  (*Id.* ¶¶ 92–94.)  The PTO instituted review

21  of the '752 patent, determining that the petitioner had more likely than not shown that its claims

22  were invalid.  (*Id.*)  The PTO did not invalidate the challenged claims of the '752 patent, however,

23  because Intellectual Ventures settled its dispute before the PTO could issue a final written decision

24  in that IPR.  Given Weisfield's and Chummun's extensive patent-related experience, they knew at

25  the time they acquired these patents that they would not survive a validity challenge.  (*Id.* ¶¶ 90,

26  95, 100-102.)[3]

27

28      [3] Weisfield and Chummun had reason to know that the other patents they asserted against
     Databricks were likely invalid as well.  U.S. Patent No. 6,839,733 (the '733 patent) is related to

DATABRICKS' OPPOSITION TO
MOTION TO DISMISS                    - 5 -
Case No. 2:24-CV-01417-JLR

FENWICK & WEST LLP
401 UNION STREET, 5TH FLOOR
SEATTLE, WASHINGTON  98101
TELEPHONE  206.389.4510
FACSIMILE  206.389.4511

Six of the seven patents Weisfield and Chummun asserted against Databricks also expired before their shell company Byteweavr filed suit.  (*Id.* ¶¶ 82–89.)  Because Weisfield's and Chummun's expected damages are limited to the six years before filing, 35 U.S.C. § 286, and Weisfield and Chummun filed suit against Databricks on March 8, 2024, they cannot collect damages for any purported infringement before March 8, 2018.  (*Id.* ¶ 24.)  In some cases, Weisfield and Chummun are limited to just over two years of damages.  (*See id.* ¶ 83 ('733 patent expired Sept. 6, 2020).)  In other words, Weisfield and Chummun acquired these patents knowing that their expected damages—assuming they could show infringement and validity—would be severely limited, and likely much lower than Databricks' cost of defending.  (*Id.* ¶¶ 64, 82-90, 102; *cf id.* ¶¶ 60-77.)

### 2.    Weisfield and Chummun create a byzantine corporation structure to shield themselves from liability.

Next, Weisfield and Chummun form various shell companies solely under their control. These companies produce no products.  They have no employees.  And they have no assets of value.  Rather, these companies are Weisfield's and Chummun's alter egos and exist solely to further their scheme as part of Ascend's "strategies that mitigate risk exposure." (*Id.* ¶¶ 103-115.)

First, Weisfield and Chummun assign a small number of patents (less than ten) to various shells whose only business is "patents [and] patent enforcement."  (Dkt. 23 ("Mot.") at 12; Complaint ¶¶ 25, 30, 33, 36, 39, 42, 45, 48, 51, 112, 117-122.)  Second, Weisfield and Chummun seek to abuse the corporate form to protect themselves from any resultant liability stemming from their bad-faith patent assertions.  (Complaint ¶¶ 104-106.)  Weisfield and Chummun create several layers of shell companies between the empty shell entity—which holds and asserts the worthless patents—and any assets they own or control.  (*Id.* ¶¶ 104, 123-126.)  If a court finds the shell entities liable for attorneys' fees for Weisfield's and Chummun's bad-faith patent assertions, Weisfield and Chummun attempt to make it impossible to recover those fees.  (*Id.* ¶¶ 18, 20, 22, 76, 104, 107, 123-126.)  Thus, Weisfield and Chummun designed their multi-layered corporate

the '752 patent, which has claims the PTO found were likely invalid. The claims of the '733 patent are broader than the claims of the '752 patent, meaning they are more easily invalidated. (Complaint ¶ 95.)

FENWICK & WEST LLP
401 UNION STREET, 5TH FLOOR
SEATTLE, WASHINGTON 98101
TELEPHONE 206.389.4510
FACSIMILE 206.389.4511

structure to make it as difficult as possible to recover any assets from the real parties in interest—themselves.

This practice mirrors findings by the Federal Trade Commission about patent assertion entities that do not seek to adjudicate the merits of patents lawsuits but seek nuisance settlements from litigation targets.  (*Id.* ¶¶ 60-67.)

### 3.    Weisfield and Chummun conduct no diligence, or ignore the results of their diligence, and assert patents in bad faith.

With this insulating corporate structure in place, Weisfield and Chummun direct their shell companies to wield their low-value patents without regard to the merits.  (Complaint ¶¶ 127–138.) Again, Weisfield's and Chummun's conduct directing Byteweavr's case against Databricks is instructive.  (*Id.*)

A prime example of Weisfield's and Chummun's disregard for the merits of their claims is their assertion of two *invalid* claims, claims 8 and 20 of the '827 patent.  (*Id.* ¶¶ 96-98.)  Although the PTO invalidated those claims (twice), and despite the Federal Circuit affirmance of both decisions, *EMC Corp.*, 786 F. App'x 1021, Weisfield and Chummun nonetheless accused Databricks of infringing those claims in litigation.

Setting aside Weisfield's and Chummun's willingness to assert invalid claims, as noted above, six of the seven patents Weisfield and Chummun asserted against Databricks are expired, (*id.* ¶¶ 78–89), and two were already determined to be likely invalid by the Patent Office, (*id.* ¶¶ 92–100), meaning Weisfield and Chummun knew their expected recovery on the merits would be minuscule at best.

Weisfield and Chummun also assert claims they know they cannot prove infringed.  For example, Weisfield and Chummun caused Byteweavr to assert U.S. Patent No. 6,862,488 (the '488 patent).  (*Id.* ¶ 80.)  That patent claims a computer-implemented method to validate equipment or processes in a "pharmaceutical and/or bio-technology manufacturing facility."  (*Id.* ¶¶ 130–131.) Yet Weisfield and Chummun identify no such facility owned by Databricks, or any evidence that Databricks' customers use its platform for that purpose.  (*Id.* ¶ 132.)  And although Databricks' offers sophisticated artificial intelligence tools, Weisfield and Chummun have accused it of

DATABRICKS' OPPOSITION TO
MOTION TO DISMISS
Case No. 2:24-CV-01417-JLR

- 7 -

FENWICK & WEST LLP
401 UNION STREET, 5TH FLOOR
SEATTLE, WASHINGTON  98101
TELEPHONE  206.389.4510
FACSIMILE  206.389.4511

infringing claims of the '752 and '733 patents, which cover an agent programmed to perform ministerial tasks, such as "answering telephone calls, taking voice mail messages, placing telephone calls, notifying the user of recently received messages (voice mail and/or email), delivering messages, [and] setting up meetings/appointments," etc. (*Id.* ¶¶ 134-135.)

## III.    <u>ARGUMENT</u>

A court should deny a motion to dismiss under Rule 12(b)(6) as long as a plaintiff's pleadings contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff meets this standard when it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). Dismissal is not proper unless "it appears beyond doubt that [the] plaintiff can prove no set of facts in support of its claims which would entitle it to relief." *City of Almaty v. Khrapunov*, 956 F.3d 1129, 1131 (9th Cir. 2020) (citation, internal alterations, and quotation marks omitted).

### A.    Defendants' Request to Dismiss Databricks' Patent Troll Prevention Act Claim Should be Denied as Moot Because Databricks Asserts no Such Claim.

Although Databricks' complaint alleges no violation of the PTPA, Defendants have moved to dismiss the non-existent claim. (Mot. at 5-6.) According to Defendants, because the Complaint refers to the PTPA in one paragraph, Databricks "alleges the PTPA." (*Id.* at 5 (citing Complaint ¶ 63).) But that paragraph merely summarizes the Washington state legislature's findings that "abusive patent litigation, and especially the assertion of bad faith infringement claims, can harm Washington's economy" in myriad ways. (Complaint ¶ 63 (citing RCW 19.350.005).) As Databricks' has made no claim under the PTPA, "there are no claims to dismiss. As a result, Defendants' Motion is moot." *Johnson v. Johnson*, No. 2:05-CV-749 TS, 2008 WL 4533975, at *1 (D. Utah Sept. 29, 2008); *see also Ford v. Wood*, No. 1:23-CV-01358, 2024 WL 4114264, at *5 (W.D. La. Aug. 22, 2024), *report and recommendation adopted*, No. 1:23-CV-01358, 2024 WL 4115990 (W.D. La. Sept. 6, 2024) (denying motion to dismiss seeking to dismiss claims not

DATABRICKS' OPPOSITION TO
MOTION TO DISMISS                    - 8 -
Case No. 2:24-CV-01417-JLR

FENWICK & WEST LLP
401 UNION STREET, 5TH FLOOR
SEATTLE, WASHINGTON  98101
TELEPHONE  206.389.4510
FACSIMILE  206.389.4511

1    asserted as moot).[4]

2    **B.    Defendants' *Noerr-Pennington* and Preemption Arguments Fail.**

3    Next, Defendants' *Noerr-Pennington* and preemption arguments against Databricks' CPA

4    claim fail for two reasons.  First, Databricks' has adequately pleaded all three of *Noerr-*

5    *Pennington*'s sham exceptions.  The Court should evaluate this fact-intensive defense on a full

6    record at summary judgment—not on the pleadings.  And because Defendants' preemption

7    argument relies on the same sham litigation test, that too fails at the pleading stage.

8    Second, even if the Court could determine on the pleading that Defendants' litigation

9    activities are legitimate efforts to petition the government for relief, *Noerr-Pennington* would only

10    immunize that aspect of their scheme.  Defendants cannot escape scrutiny for their actions simply

11    because one aspect of their scheme involves filing lawsuits.

12    **1.    *Noerr-Pennington* protects only legitimate petitioning efforts, and
         Databricks has adequately pleaded all three sham exceptions.**

13

14    The *Noerr-Pennington* doctrine protects individuals who legitimately "petition the

15    [g]overnment for a redress of grievances" from liability for their petitioning activities.  *City of*

16    *Columbia v. Omni Outdoor Advert., Inc.*, 499 U.S. 365, 378 (1991).  Although originally

17    developed in the antitrust context, courts have applied *Noerr-Pennington* in other circumstances,

18    *Relevant Group, LLC v. Nourmand*, 116 F.4th 917, 927 (9th Cir. 2024).

19    Because *Noerr-Pennington* protects only "bona fide [petitioning] efforts," *Clipper*

20    *Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.*, 690 F.2d 1240, 1251 (9th Cir. 1982), it

21    does not apply in "situations in which persons use the governmental process—as opposed to the

22    outcome of that process" to achieve an ulterior purpose—i.e., when the litigation is a mere "sham."

23    *City of Columbia*, 499 U.S. at 380.

24    The Ninth Circuit recognizes three circumstances where the sham exception applies.  As

25    explained below, Databricks has adequately alleged all three.

26

27    _____

28    [4] Defendants' subsequent filing confirms they understand that Databricks asserts no PTPA
      claim.  (Dkt. 32 at 2.)

DATABRICKS' OPPOSITION TO
MOTION TO DISMISS                            - 9 -
Case No. 2:24-CV-01417-JLR

1

2

          **a.**    **Databricks has sufficiently alleged both objective baselessness and subjective bad faith related to Defendants' litigation against Databricks.**

3

4

5

6

7

8

The first *Noerr-Pennington* sham exception applies when a party files a single litigation that is (1) objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits and (2) that it brought for an improper purpose.  *Relevant*, 116 F.4th at 928 (citing *Pro. Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60–61 (1993) ("*PRE*")).   The objective component considers whether a reasonable litigant would have believed they had probable cause to sue.  *PRE*, 508 U.S. at 62.

9

10

11

12

13

14

15

Courts use the same standard to determine both whether *Noerr-Pennington*'s single, sham litigation exception applies to strip immunity from a patent litigant and whether federal patent law preempts state law claims.  *Globetrotter Software, Inc. v. Elan Comput. Grp., Inc.*, 362 F.3d 1367, 1374, 1377 (Fed. Cir. 2004) (citing *Golan v. Pingel Enter., Inc.*, 310 F.3d 1360, 1371 (Fed. Cir. 2002)).  In the context of preemption, the Federal Circuit has held that "[i]nfringement allegations are objectively baseless if 'no reasonable litigant could realistically expect success on the merits.'" *800 Adept, Inc. v. Murex Sec., Ltd.*, 539 F.3d 1354, 1370 (Fed. Cir. 2008).

16

17

18

19

20

21

The ultimate merits of any patent assertion do not control the objective inquiry.  In *800 Adept*, the Federal Circuit held that "the result of [any] infringement claims … is not dispositive of whether [they] were reasonable." *Id.* at 1371-72.  Rather than focus on whether a patent could ultimately be proved valid or infringed, the objective inquiry looks to "whether the evidence was such that [the patentee] could not have had a reasonable basis for believing that the patent was valid [or infringed] *when it asserted the patent*." *Id.* at 1370 (emphasis added).

22

          **(1)**    **Databricks has sufficiently alleged that Defendants' assertions are objectively baseless.**

23

24

Contrary to Defendants' contention, (Mot. at 8-12), Databricks' allegations are more than sufficient to show that Defendants' patent suit against Databricks is objectively baseless.

25

*Defendants asserted claims invalidated in IPRs affirmed by the Federal Circuit.*

26

27

28

Defendants' assertion of *invalid claims* should end this inquiry.  Defendants asserted two claims—claims 8 and 20 of the '827 patent—that the PTO invalidated in IPR final written

DATABRICKS' OPPOSITION TO
MOTION TO DISMISS
Case No. 2:24-CV-01417-JLR      - 10 -      FENWICK & WEST LLP
401 UNION STREET, 5TH FLOOR
SEATTLE, WASHINGTON 98101
TELEPHONE 206.389.4510
FACSIMILE 206.389.4511

1  decisions affirmed by the Federal Circuit.  (Complaint ¶¶ 96-98); *Intell. Ventures I LLC v. EMC*
2  *Corp.*, 786 F. App'x 1021 (Fed. Cir. 2019).  As no litigant could reasonably believe they would
3  prevail by asserting claims twice adjudicated to be invalid, Defendants' assertion of those claims
4  was objectively baseless.  *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 644 (2015) ("[I]f
5  the patent is indeed invalid . . . there is no liability."); *Shelcore, Inc. v. Durham Indus., Inc.*, 745
6  F.2d 621, 628 (Fed. Cir. 1984) (a defendant "can incur no liability for 'infringement' of invalid
7  claims.").

8       Defendants cannot successfully contend that their subsequent withdrawal of the invalid
9  claims means the Court need not consider their assertion as part of its analysis.  (Motion at 9-10,
10  *id.* at 10 n.8.)  The objective inquiry evaluates whether Defendants had a reasonable basis to
11  believe they could prevail *at the time they asserted those claims.  800 Adept*, 539 F.3d at 1370.
12  Defendants cannot and do not claim they did.  And the assertion of invalid claims further bolsters
13  other allegations that Defendants lacked a reasonable basis to assert *any* patents against Databricks.

14       *Defendants asserted claims they knew would not withstand a validity challenge.*

15       Databricks' other allegations further show objective baselessness.  Databricks alleged that
16  Weisfield and Chummun not only knew from the prior litigation history of the '827 and '752
17  patents that the claims they asserted were likely invalid, but also that Weisfield and Chummun
18  specifically targeted them *because they are likely invalid.*  (Complaint ¶¶ 78-102.)  These
19  allegations are sufficient to survive a motion to dismiss.  *See Alt. Electrodes, LLC v. Empi, Inc.*,
20  597 F. Supp. 2d 322, 331 (E.D.N.Y. 2009) (plaintiff plausibly supported its claim under the sham
21  exception "with the assertion that there could be no valid patent claim due to the existence of 'prior
22  art'").

23       Defendants do not contest Databricks' allegations.  Instead, they claim that because their
24  patents are "presumptively valid," they were reasonable to believe that they could prevail in their
25  lawsuit.  (Mot. at 7, 9-10).  In short, Defendants argue that because no court or tribunal has
26  invalidated the specific claims they asserted against Databricks,[5] they were objectively reasonable

27

28  _____
[5] Other than claims 8 and 20 of the '827 patent, as explained above.

DATABRICKS' OPPOSITION TO
MOTION TO DISMISS          - 11 -
Case No. 2:24-CV-01417-JLR

FENWICK & WEST LLP
401 UNION STREET, 5TH FLOOR
SEATTLE, WASHINGTON 98101
TELEPHONE 206.389.4510
FACSIMILE 206.389.4511

1    to assume the patents would withstand a validity challenge. (*Id.*)  That is not the law.

2         The Federal Circuit has repeatedly rejected the use of the presumption of validity to justify

3    asserting patents of questionable validity.  If a litigant has reason to know that its patents may be

4    invalid, it has a duty to assess validity before filing suit, notwithstanding the presumption of

5    validity.  *Inventor Holdings, LLC v. Bed Bath & Beyond, Inc.*, 876 F.3d 1372, 1379 (Fed. Cir.

6    2017); *Taurus IP, LLC v. DaimlerChrysler Corp.*, 726 F.3d 1306, 1328 (Fed. Cir. 2013) ("[A]

7    party cannot assert baseless infringement claims and must continually assess the soundness of

8    pending infringement claims.").

9         So when assessing whether a patentee was objectively reasonable in asserting patents it

10   had reason to know may be invalid, the inquiry still focuses on what the patentee knew when it

11   filed suit.  *800 Adept*, 539 F.3d at 1370.  And several courts have denied a motion to dismiss based

12   on *Noerr-Pennington* where the patentee was aware that claims related to those at issue had

13   previously been invalidated, but the patentee kept asserting similar claims.  *Kimberly-Clark*

14   *Worldwide Inc. v. First Quality Baby Prods. LLC*, No. 14-CV-1466, 2015 WL 1582368, at *11

15   (E.D. Wis. Apr. 9, 2015) (citing cases) (holding that "the PTO's issuance of the patent is

16   insufficient to overcome a claim that the patentee has engaged in sham litigation.").

17                    <u>*Defendants made objectively baseless infringement allegations.*</u>

18        Databricks also plausibly alleged that Defendants' infringement reads were objectively

19   baseless.  (*See supra* Background § C.3; Complaint ¶¶ 127-138.)

20        Defendants miss the mark with their counterargument that Databricks' allegations rely on

21   yet-to-be-determined claim constructions and argue that these are "legal determination[s] . . . that

22   cannot be presumed true."  (Mot. at 11-12.)  Defendants needed to have a reasonable basis *before*

23   filing suit, *800 Adept*, 539 F.3d at 1370, which required them to "perform an objective evaluation

24   of the claim terms to satisfy its obligation to conduct a reasonable pre-suit evaluation."  *Source*

25   *Vagabond Sys. Ltd. v. Hydrapak, Inc.*, 753 F.3d 1291, 1301 (Fed. Cir. 2014)

26   (affirming Rule 11 sanctions based on "frivolous claim construction arguments"); *Teva Pharms.*

27   *USA, Inc. v. Abbott Lab'ys*, 580 F. Supp. 2d 345, 364 (D. Del. 2008) (denying motion for summary

28

DATABRICKS' OPPOSITION TO
MOTION TO DISMISS                        - 12 -
Case No. 2:24-CV-01417-JLR

judgment of *Noerr-Pennington* immunity where "a jury could find defendants' infringement allegations objectively baseless" based on untenable claim construction positions).

### *Databricks sufficiently alleged that Defendants' entire litigation was baseless.*

Finally, Defendants are wrong when they contend that because Databricks' complaint highlighted Defendants' objective baselessness only as to four of the seven patents they asserted, Databricks failed to allege that the entirety of their seven-patent lawsuit is objectively baseless. (Mot. at 10-11.)

Databricks pleaded that Defendants' entire suit was objectively baseless. (Complaint at Introduction, ¶¶ 56, 76, 90, 101-102, 136, 138, 140-144.) Databricks supported those allegations by providing detailed explanations about why particular assertions were baseless. (*Id.* ¶¶ 91-100, 130-135.) Databricks' allegations, which the Court must accept as true, are sufficiently specific to survive a motion to dismiss. *Kearney v. Foley & Lardner, LLP*, 590 F.3d 638, 647 (9th Cir. 2009). A reasonable jury could infer that, if Defendants lacked a reasonable basis to assert four patents, they likewise lacked a reasonable basis to assert the other three.

### (2)    Databricks has sufficiently alleged that Defendants made patent assertions in subjective bad faith.

In arguing subjective bad faith, Defendants fail to meaningfully contest Databricks' core allegations—i.e., that they sued Databricks not to seek a resolution on the merits, but to leverage Databricks' defense costs into a settlement. (Mot. at 6.) Rather, Defendants rely on an argument that Databricks failed to allege that Defendants' "lawsuit conceals 'an attempt to interfere directly with the business relationships of a competitor.'" (*Id.* at 7 (quoting *PRE*, 508 U.S. at 60).) But Defendants' argument misunderstands the law.

*Noerr-Pennington* first developed in the antitrust context, which is why early cases required a claimant to show that the subjectively baseless component had an anticompetitive intent—i.e., *antitrust* cases required a showing that the "petitioning is done for an anticompetitive purpose or to interfere with a competitor's business relationships." *B&G Foods N. Am., Inc. v. Embry*, 29 F.4th 527, 536 (2022). But "[b]ecause these principles may be inapt in non-antitrust contexts," they are not "rigid requirements in such situations." *Id.* Thus, when *Noerr-Pennington*

DATABRICKS' OPPOSITION TO
MOTION TO DISMISS
Case No. 2:24-CV-01417-JLR                    - 13 -

FENWICK & WEST LLP
401 UNION STREET, 5TH FLOOR
SEATTLE, WASHINGTON 98101
TELEPHONE 206.389.4510
FACSIMILE 206.389.4511

is invoked outside the antitrust context, there is no anticompetitive requirement. *Id.*; *see also Hakak v. Geffen*, No. 2:22-CV-09287-AB-PD, 2023 WL 4681385, at *4 n.3 (C.D. Cal. June 28, 2023) ("Because the *Noerr-Pennington* developed in the antitrust context, many opinions defining the doctrine refer to anticompetitive conduct. However, the doctrine applies outside of the antitrust field.").

Here, Databricks has alleged no antitrust violation. Databricks therefore need show only that Defendants "intended to harm the plaintiff through the abuse of a governmental process itself, as opposed to harms flowing from the outcome of that process." *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1350 (Fed. Cir. 2014) (no discussion of an anticompetitive requirement to invoke sham litigation exception for tortious interference or RICO claims); *Manistee Town Center v. City of Glendale*, 227 F.3d 1090, 1095 (9th Cir. 2000) (same for § 1983 claims). Databricks adequately pleaded such harm. (Complaint ¶¶ 140-143.)

### b. Defendants are serial petitioners that file lawsuits in subjective bad faith.

The second sham exception applies "where the conduct involves a series of lawsuits 'brought pursuant to a policy of starting legal proceedings without regard to the merits' and for an unlawful purpose." *Relevant*, 116 F.4th at 928. Proving this exception does not require the plaintiff to show that the lawsuits were objectively baseless. Rather, the plaintiff need only show that "the legal filings [were] made, not out of a genuine interest in redressing grievances, but as a part of a pattern or practice of successive filings undertaken essentially for purposes of harassment." *USS-POSCO Indus. v. Contra Costa Cnty. Bldg. & Const. Trades Counsel, AFL-CIO*, 31 F.3d 800, 811 (9th Cir. 1994) ("*POSCO*"); *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 511–513 (1972). In other words, "[w]hen dealing with a series of lawsuits, the question is not whether any one of them has merit—some may turn out to, just as a matter of chance—but whether they are brought pursuant to a policy of starting legal proceedings without regard to the merits and for the purpose of injuring a market rival." *POSCO*, 31 F.3d at 811.

Here, Defendants do not contest that they meet the definition of "serial petitioners." And

DATABRICKS' OPPOSITION TO
MOTION TO DISMISS                    - 14 -
Case No. 2:24-CV-01417-JLR

FENWICK & WEST LLP
401 UNION STREET, 5TH FLOOR
SEATTLE, WASHINGTON 98101
TELEPHONE 206.389.4510
FACSIMILE 206.389.4511

their filing of 25 lawsuits, (Complaint ¶¶ 67-75, 144), puts them squarely within that category. *POSCO*, 31 F.3d at 811 (twenty-nine lawsuits sufficient); *Waugh Chapel S., LLC v. United Food & Com. Workers Union Loc. 27*, 728 F.3d 354, 364 (4th Cir. 2013) (fourteen lawsuits sufficient). And in arguing that the serial petitioning exception does not apply Defendants, again, do not meaningfully contest that they brought those lawsuits for an improper purpose and without regard to their merits. (Mot. at 13.)

Defendants instead misplace their reliance on another vestige of *Noerr-Pennington* from the antitrust context, arguing that *Noerr-Pennington* requires dismissal of Databricks' claims because Databricks' failed to allege that Defendants' intended their lawsuits to "injure a market rival." (*Id.*) But as explained above, where a defendant invokes *Noerr-Pennington* outside the antitrust context, the antitrust-specific harm components—sure an injury to a market rival—are not required. *B&G Foods*, 29 F.4th at 536 (2022); *Hakak*, 2023 WL 4681385, at *4 n.3; *Content Extraction*, 776 F.3d at 1350; *Manistee*, 227 F.3d at 1095.

### c. Defendants do not dispute that they intentionally misrepresented their corporate structure in legal proceedings.

The third *Noerr-Pennington* exception occurs where the "unlawful conduct 'consists of making intentional misrepresentations to the court'" that "deprive[s] the litigation of its legitimacy." *Relevant*, 116 F.4th at 928; *B&G Foods N. Am., Inc. v. Embry*, No. 2:20-CV-00526-KJM-DB, 2023 WL 3751991, at *4 (E.D. Cal. June 1, 2023) (quoting *Kottle v. Nw. Kidney Ctrs.*, 146 F.3d 1056, 1060 (9th Cir. 1998)).

Here, Databricks alleges that Defendants intentionally misrepresented their corporate structure by filing "conflicting information about [Byteweavr's] ownership and control." (Complaint ¶ 24.) That is because Defendants have twice, subject to Rule 11, filed disclosures attesting that Byteweavr "is a wholly owned subsidiary of Republic Register Agent, LLC"— (RRA). (*Id.*) Yet they have also, again subject to Rule 11, represented that RRA "has absolutely no interest in [Byteweavr's] case[s]," and that "RRA is merely ByteWeavr's agent for service in Texas and has no relation to Byteweavr." (*Id.*) Defendants' about-face came only *after* Byteweavr's ownership—by Weisfield, Chummun, and their jointly controlled entities—came

DATABRICKS' OPPOSITION TO
MOTION TO DISMISS
Case No. 2:24-CV-01417-JLR
- 15 -
FENWICK & WEST LLP
401 UNION STREET, 5TH FLOOR
SEATTLE, WASHINGTON 98101
TELEPHONE 206.389.4510
FACSIMILE 206.389.4511

1  under scrutiny.  (*Id.*)

2      Defendants' misrepresentations deprived those litigations of their legitimacy.  Defendants

3  made those misrepresentations in furtherance of their scheme to "to cloak the true ownership of

4  the patents acquired as part of [their] scheme." (*Id.* ¶ 106.)  The misrepresentations were attempts

5  to hide themselves as the true beneficiaries of their scheme, (*id.* ¶¶ 123, 125-26), and to insulate

6  their assets from any adverse judgments, (*id.* ¶¶ 123, 140-142).  In other words, Defendants

7  purposefully misrepresented their shell-network ownership structure before two federal courts to

8  undermine those courts' ability to administer sanctions or award attorneys' fees to deter frivolous

9  infringement assertions.  (*Id.*)

10      Defendants have never explained their misrepresentations.  And they fail to address them

11  here.  (*See generally* Mot.)  This provides an independent basis for the Court to deny Defendants

12  *Noerr-Pennington* immunity on the pleadings.[6]

13            **d.**    **Defendants' preemption arguments fail for the same reasons.**

14      As Defendants concede, the standard to determine whether federal patent law preempts

15  Databricks' CPA claim is the same as whether Databricks has adequately alleged the sham

16  litigation exception to *Noerr-Pennington*.  (Mot. at 15); *800 Adept*, 539 F.3d at 1370.  Thus, for

17  the same reasons that Defendants cannot show that the Court should dismiss Databricks' claims

18  under *Noerr-Pennington*, Defendants have failed to carry their burden to show that federal patent

19  law preempts Databricks' claims on the pleadings.

20                  *          *          *

21      As Defendants' arguments make clear, their *Noerr-Pennington* and preemption defenses

22  are "fact-intensive inquir[ies] that cannot be resolved via a motion to dismiss."  *Washington v.*

23  *Landmark Tech. A, LLC*, 637 F. Supp. 3d 1154, 1163 (W.D. Wash. 2022).  Databricks' allegations

24  are well-pleaded, and if accepted as true leave no doubt that Defendants use lawsuits as a tool in

25  

26     [6] Even the most charitable explanation of Defendants' conduct—their misrepresentations were not deliberate—means they *still* violated Rule 11 by making representations to the Court without performing "an inquiry reasonable under the circumstances."  Fed. R. Civ. P. 11(b).

27  This too warrants denying them *Noerr-Pennington* immunity, because it bolsters Databricks' assertions that Defendants abuse the litigation process by filing pleadings without regard to their

28  merits.

DATABRICKS' OPPOSITION TO
MOTION TO DISMISS
Case No. 2:24-CV-01417-JLR

- 16 -

FENWICK & WEST LLP
401 UNION STREET, 5TH FLOOR
SEATTLE, WASHINGTON 98101
TELEPHONE 206.389.4510
FACSIMILE 206.389.4511

further of their scheme—not to petition for legitimate relief.

### 2.    *Noerr-Pennington* does not immunize Defendants' scheme simply because Defendants file lawsuits.

Finally, even if *Noerr-Pennington* protected Defendants' litigation activity, their larger, overall scheme would support a claim. *See Clipper*, 690 F.2d at 1263–64; *Int'l Motor Contest Ass'n, Inc. v. Staley*, 434 F. Supp. 2d 650, 663 (N.D. Iowa 2006). As the Ninth Circuit explained in *Clipper*, an otherwise unlawful scheme "does not enjoy immunity simply because an element of that violation involves an action which itself is not illegal." 690 F.2d at 1263. There, the plaintiff alleged "that the defendant engaged in a [] conspiracy, part of which involve[s] defendants' protests to" an administrative body. *Id. Clipper* held that *Noerr-Pennington* immunity does not apply in that situation. Specifically, it held "that when there is a conspiracy prohibited by the antitrust laws, and the otherwise legal litigation is nothing but an act in furtherance of that conspiracy, general antitrust principles apply, notwithstanding the existence of *Noerr* immunity." *Id.* In sum, "[w]hen . . . petitioning activity is but a part of a larger overall scheme . . . there is no *overall* immunity." *Id.* (emphasis added).

Databricks alleges that Defendants' scheme involves more than filing sham patent lawsuits. First, Defendants specifically target low-value (invalid or expired) patents. (Complaint ¶¶ 78-102, 116-122.) They then set up a complicated corporate structure for no reason other than to erect artificial barriers to recovery for their misdeeds. (*Id.* ¶¶ 103-115, 123-126.) And once they cause their corporate shells to file litigation after litigation to extort nuisance settlements, (*id.* ¶¶ 127-138), Defendants take it a step further by mispresenting their ownership structure to the courts to further their scheme, (*id.* ¶¶ 24, 106, 123-126, 140-142.)

*Noerr-Pennington* thus does not immunize Defendants' scheme in its entirety. "If [plaintiff] can prove that the defendants engaged in activities which violated the [unfair competition] laws, those violations do not become immune simply because the defendants used legal means-[litigation] as a means to enforce the violations." *Clipper*, 690 F.2d at 1264; *see Hynix Semiconductor Inc. v. Rambus, Inc.*, No. CV-0020905 RMW, 2006 WL 1883353, at *3 (N.D. Cal. July 7, 2006) (over no objection from the plaintiff, determining that *Noerr-Pennington* insulated

DATABRICKS' OPPOSITION TO
MOTION TO DISMISS                                    - 17 -
Case No. 2:24-CV-01417-JLR

FENWICK & WEST LLP
401 UNION STREET, 5TH FLOOR
SEATTLE, WASHINGTON 98101
TELEPHONE 206.389.4510
FACSIMILE 206.389.4511

defendants litigation activities, but permitting plaintiffs to proceed on their antitrust claims).[7]

Indeed, courts must analyze whether the defendant's "conduct is unfair 'under a *case-specific analysis*.'" *Greenberg v. Amazon.com, Inc.*, 553 P.3d 626, 638 (Wash. 2024), as amended (Aug. 16, 2024) (citing *Rush v. Blackburn*, 190 Wash. App. 945, 962 (2015)) (emphasis added). Here, Databricks will prove, and it has adequately alleged, that Defendants' conduct, in total, violates the CPA. While Defendants argue that their individual actions are not "unlawful" (Mot. at 1, 2, 18), that argument is conclusory, divorced from the facts of this case, and only highlights why dismissal at the pleadings stage, without the benefit of discovery, is improper.

### C.    Databricks Adequately Alleged its CPA Claim.

"Washington's CPA provides that '[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." *Panag v. Farmers Ins. Co. of Wash.*, 204 P.3d 885, 889 (2009) (quoting RCW 19.86.020). The CPA's purpose to "complement the body of federal law governing restraints of trade, unfair competition and unfair, deceptive and fraudulent acts and practices in order to protect the public and foster fair and honest competition." RCW 19.86.920. "The CPA is to be 'liberally construed that its beneficial purposes may be served.'" *Panag*, 166 Wash. 2d at 37 (quoting RCW 19.86.920).

### 1.    Databricks adequately alleged unfair or deceptive acts occurring in trade or commerce that affect Washingtonians.

A CPA requires the claimant to show (1) an unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) impacting the public interest, (4) injury to the plaintiff's business or property, and (5) causation. *Nelson v. Flagstar Bank FSB*, No. C12–2012, 2013 WL

---

[7] While activities "incidental" to litigation, such as pre-suit demand letters and discovery communications, may qualify for protection under *Noerr-Pennington* even though they do not constitute petitioning, *see B&G Foods N. Am., Inc. v. Embry*, 29 F.4th 527, 535 (9th Cir.), cert. denied, 143 S. Ct. 212, 214 L. Ed. 2d 83 (2022), Defendants' conduct falls outside that exception. The first two steps of Defendants' scheme—purposefully seeking and acquiring low-value patents and creating a corporate structure specifically designed to thwart district courts' ability to police their conduct—are not incidental to litigation. Defendants could have sought high-quality patents (or not patents at all) but chose to seek worthless patents instead. Weisfield and Chummun could have asserted patents in their own name, through entities that possess assets sufficient a judgment, or to sufficiently capitalize their shell companies. They did not. None of this "conduct is customary 'pre-litigation' activity." *Venetian Casino Resort, L.L.C. v. N.L.R.B.*, 484 F.3d 601, 612 (D.C. Cir. 2007)

DATABRICKS' OPPOSITION TO
MOTION TO DISMISS                     - 18 -
Case No. 2:24-CV-01417-JLR

FENWICK & WEST LLP
401 UNION STREET, 5TH FLOOR
SEATTLE, WASHINGTON 98101
TELEPHONE 206.389.4510
FACSIMILE 206.389.4511

1  474697, at *2 (W.D. Wash. Feb. 6, 2013) (citing *Hangman Ridge Training Stables, Inc. v. Safeco*

2  *Title Ins.,* 719 P.2d 531, 533 (Wash. 1986)).  The CPA statute defines "trade" and "commerce" to

3  "include the sale of assets or services, and any commerce directly or indirectly affecting the people

4  of the state of Washington."  RCW 19.86.010(2).

5      Defendants motion does not contest the allegations that their scheme is unfair and

6  deceptive, impacts the public interest, and has causally injured Databricks.  (*See* Mot. at 15-16.)

7  Rather, Defendants argue that Databricks CPA claim must be dismissed because Databricks has

8  failed to plausibly allege that it was injured in any trade or commerce directly or indirectly

9  affecting the people of the state of Washington.  (*Id.* at 16.)  That is because, Defendants contend,

10  Databricks is an out-of-state corporation and its harm stems from a Texas lawsuit filed by a Texas

11  entity, Byteweavr.  (*Id.*)  This argument fails twice over.

12      First, Defendants acts *indirectly* affect the people of the state of Washington.  Defendants

13  do not contest that Weisfield and Chummun orchestrated their scheme from their base of

14  operations in Washington state.  (Complaint ¶¶ 108-09.)  Defendants do not contest that

15  Washington state is where Weisfield and Chummun sought out and acquired their low-value

16  patents from another Washington entity, Intellectual Ventures.  (*Id.* ¶ 116.)  Nor do Defendants

17  contest that Washington state is where Weisfield and Chummun created assetless shell companies,

18  and how to distribute their low-value patents to each entity.  (*Id.* ¶¶ 108-09.)  And that Washington

19  state is where Weisfield and Chummun direct their shells to file lawsuits, including the lawsuit

20  Byteweavr filed against Databricks.  (*Id.* ¶¶ 133-38.)  Defendants' conduct—indiscriminate mass

21  patent assertions made possible by their scheme— indirectly affects the people of Washington

22  state because it "has the capacity to injure other persons."  (*Id.* ¶ 142.); RCW 19.86.093 ("a

23  claimant may establish that the act or practice is injurious to the public interest because it: [](a)

24  Injured other persons; (b) had the capacity to injure other persons; or (c) has the capacity to injure

25  other persons.").

26      Databricks' state of residence does not matter.  "The CPA attempts to bring within its reach

27  [] *every* person who conducts unfair or deceptive acts or practices in *any* trade or commerce."

28

*Michael v. Mosquera-Lacy*, 200 P.3d 695, 699 (Wash. 2009).   Thus, the Supreme Court of Washington has expressly rejected the argument that only Washington citizens can bring CPA claims.  *Thornell v. Seattle Serv. Bureau, Inc.*, 363 P.3d 587, 590-92 (Wash. 2015) held that "[t]he CPA does allow claims for an out-of-state plaintiff against all persons who engage in unfair or deceptive acts that directly or indirectly affect the people of Washington."  And that precluding an out-of-state plaintiff from bringing a CPA claim would violate the statute by "giv[ing] no effect to the words 'indirectly affecting.'" *Id.* at 591. That is because "[t]he statutory purpose is broadly worded not only to protect the public but also, and distinctly, to foster "fair and honest competition." *Id.* (quoting RCW 19.86.920).[8]  Defendants fail to address this controlling authority.  Instead, they cite to a *withdrawn* Washington State Supreme Court decision and a case relying on the portion *omitted* when the opinion was reissued.  (Mot. at 16 (citing *Schnall v. AT&T Wireless Servs., Inc.*, 168 Wn.2d 125, 225 P.3d 929 (2010), *relevant portion withdrawn upon reconsideration by Schnall v. AT&T Wireless Servs., Inc.*, 171 Wn.2d 260, 259 P.3d 129 (2011) and *K.S. v. Ambassador Programs, Inc.*, 2010 WL 1629247, at *1-2 (E.D. Wash.  Apr. 21, 2010).)

Defendants' unfair acts moreover *directly* affect the people of the state of Washington.  Databricks does business in Washington state through its Bellevue and Seattle offices.[9]  Databricks also partners with, or provides services to, some of the largest companies in Washington, including Amazon, Microsoft, T-Mobile, and the City of Seattle.  (Complaint ¶¶ 6 n.3, 7 n.5.)  As the Washington state legislature has made clear, Defendants' "abusive patent litigation, and especially [their] assertion of bad faith infringement claims," harms Washington's economy because, rather than "invest, develop and produce new products, expand, or hire new workers," Databricks must either "settle and [] pay a licensing fee, even [though Defendants'] claim is meritless," or expend resources fighting those claims.  (Complaint ¶ 63 (quoting RCW

---

[8] The CPA states that "*[a]ny person* who is injured in his or her business or property by a violation" may bring a CPA claim, RCW 19.86.090 (emphasis added), and that, for purposes of the statute, a "person" includes corporations and other business entities, RCW 19.86.010.

[9]     https://www.databricks.com/blog/2021/11/22/announcing-databricks-seattle-rd-site.html; https://www.databricks.com/company/contact/office-locations.   "[T]his court may take judicial notice of . . . matters of public record, as such documents are not subject to reasonable dispute." *Hogan v. Unum Life Ins. Co. of Am.*, 81 F. Supp. 3d 1016, 1020 (W.D. Wash. 2015).

DATABRICKS' OPPOSITION TO
MOTION TO DISMISS                              - 20 -
Case No. 2:24-CV-01417-JLR

FENWICK & WEST LLP
401 UNION STREET, 5TH FLOOR
SEATTLE, WASHINGTON 98101
TELEPHONE  206.389.4510
FACSIMILE  206.389.4511

19.350.005)).  In other words, Defendants' "assertion of bad faith infringement claims," forces Databricks to waste resources defending itself, rather than bolstering its relationships with the companies and people of Washington.

### 2. Databricks has standing to bring its CPA claim.

Defendants' standing argument is two-fold.  First, Defendants argue that Databricks does not have standing because it is not a Washington resident.  (Mot. at 16.)  As explained above, that argument is contrary to Washington law.  *Thornell*, 363 P.3d at 590-92.[10]

Second, Defendants claim that Databricks does not have standing because its injury is hypothetical.  (Mot. at 17.)  According to Defendants, Databricks alleged injury will occur only if it wins the Byteweavr lawsuit, if it then obtains a fee award against Byteweavr, and then only if Defendants' scheme works to shield Weisfield and Chummun from liability.  *Id.* (citing Complaint ¶ 143.)  Defendants are wrong.

"Injuries that raise an actionable claim under the CPA are "relatively expansive" and include those that are 'both minimal and temporary.'"  *Kosovan v. Omni Ins. Co.*, 19 Wash. App. 2d 668, 700, (2021).  A CPA claimant need not even "demonstrate a quantifiable monetary loss because the CPA addresses injuries as opposed to damages."  *Id.*

Databricks' injury stems from being targeted by Weisfield's and Chummun's scheme, including the monetary and non-monetary resources it has expended and continues to expend fighting Weisfield's and Chummun's bad-faith patent-infringement assertions.  (Complaint ¶ 143.) There is no ambiguity about Databricks' alleged injury, as Defendant themselves note that "Databricks alleges that it was injured by [Byteweavr's] patent suit because it has had to pay its lawyers and incurred costs."  (Mot. at 16 (citing Complaint ¶ 143).)  Defendants' argument, by contrast, mischaracterizes Databricks' allegations.  It ignores the first sentence of Paragraph 143

---

[10] None of Defendants' other authority support dismissal for lack of standing.  (Mot. at 16.) As explained above, Defendants rely on the portion of *Schnall* that was withdrawn via rehearing. *Dwyer v. J.I. Kislak Mortgage Corp.* and *Lyon v. Caterpillar, Inc.* merely state that one purpose of state consumer protection acts is to protect in-state consumers.  13 P.3d 240, 243 (Wash. Ct. App. 2000); *Lyon*, 194 F.R.D. 206, 216 (E.D. Pa. 2000).  None of these cases overrule *Thornell*'s unambiguous holding that out-of-state claimants may bring claims under the Washington CPA.

DATABRICKS' OPPOSITION TO
MOTION TO DISMISS                    - 21 -
Case No. 2:24-CV-01417-JLR

FENWICK & WEST LLP
401 UNION STREET, 5TH FLOOR
SEATTLE, WASHINGTON 98101
TELEPHONE 206.389.4510
FACSIMILE 206.389.4511

of the Complaint to paint Databricks' alleged harm as hypothetical.  (*Id.* at 17.)  But that is not what Databricks alleged, and Defendants' attempt to re-write the Complaint does not warrant dismissal.

### D.    As this Case Shares no Overlapping Claims with Byteweavr's Patent Suit, the Court Should not Stay or Transfer it.

The Court should not stay or transfer this case to the Eastern District of Texas under the first-to-file rule.  That rule provides that "[w]hen two actions that sufficiently overlap are filed in different federal district courts, one for infringement and the other for declaratory relief, the declaratory judgment action, if filed later, generally is to be stayed, dismissed, or transferred to the forum of the infringement action."  *Futurewei Techs., Inc. v. Acacia Rsch. Corp.*, 737 F.3d 704, 708 (Fed. Cir. 2013).  The rule is applied case by case "based on such factors such as the extent of overlap, the likelihood of conflict, the comparative advantage and the interest of each forum in resolving the dispute.  *In re Telebrands Corp.*, 773 F. App'x 600, 602 (Fed. Cir. 2016).

Here, Databricks brings only two claims:  violation of the Washington State CPA and civil conspiracy.  (*See generally* Complaint.)  Databricks has not sought a declaration of invalidity, unenforceability, or non-infringement of *any* patent.  (*See id.*)  Nor have Defendants asserted that Databricks infringes any patent here.

Despite the lack of any patent-infringement allegations, Defendants argue that the Court should stay or transfer its lawsuit because "this case is essentially a declaratory judgment action on the validity and non-infringement defenses" Databricks raised in the co-pending Texas patent lawsuit.  (Mot. at 18-19.)  This argument mischaracterizes Databricks' claims and the issues the jury will decide in this litigation.

Here, Databricks will prove that Defendants violated the CPA through their scheme to acquire low-value patents, create an insulating corporate network, and filing patent cases without regard to the merits.  By contrast, in the Texas suit, Byteweavr will attempt to prove that Databricks' infringes the sevens patents-in-suit.  The ultimate merits of Byteweavr's patents claims are *irrelevant* to Databricks' claims here.  *See 800 Adept*, 539 F.3d at 1370.  For the same reasons, there is no risk of conflict between this and the Texas case.  Whether Defendants' scheme violates

DATABRICKS' OPPOSITION TO
MOTION TO DISMISS                        - 22 -
Case No. 2:24-CV-01417-JLR

FENWICK & WEST LLP
401 UNION STREET, 5TH FLOOR
SEATTLE, WASHINGTON  98101
TELEPHONE  206.389.4510
FACSIMILE  206.389.4511

1  the CPA is a separate issue from the ultimate merits of their patent infringement claims.

2      Defendants' assertion that Databricks' CPA claims "may touch upon some evidence or

3  require similar witnesses as the patent action" does not mean "the first-to-file "substantial

4  similarity' test [is] met." *Zero Techs., LLC v. Clorox Co.*, 713 F. Supp. 3d 40, 69 (E.D. Pa. 2024).

5  As explained above, the CPA "and patent claims have different elements with multiple limitations,

6  so the extent of the factual overlap of what must be proven in this case is not enough." *Id.*; *see*

7  *also In re Telebrands*, 773 Fed. App'x at 603 (Fed. Cir. 2016) (affirming denial of stay or transfer

8  under the first to file rule where "there [was] no real risk of duplicative litigation or judicial

9  inefficiency when [the courts] will be ultimately tasked with resolving separate legal claims" and

10  "the resolution of any of the claims [in one case] will not extinguish the [claims in the other]").

11      Finally, the comparative advantage and the interest of each forum in resolving the dispute

12  weighs in favor of a Washington-based court presiding over Databricks' CPA claim.  As explained

13  above, Weisfield and Chummun devised and orchestrated their scheme from Washington state,

14  and in doing so have harmed the people of Washington.  Washington has a strong interest here,

15  the Courts' familiarity with Washington law will be advantageous, as will its location.

16      As the first-to-file rule has no applicability here, the Court should deny Defendants' request

17  to stay or transfer.

18  **IV.    <u>CONCLUSION</u>**

19      For the above reasons, the Court should deny Defendants' motion to dismiss, stay, or

20  transfer in full.

21

22

23

24

25

26

27

28

DATABRICKS' OPPOSITION TO
MOTION TO DISMISS                    - 23 -
Case No. 2:24-CV-01417-JLR

FENWICK & WEST LLP
401 UNION STREET, 5TH FLOOR
SEATTLE, WASHINGTON  98101
TELEPHONE  206.389.4510
FACSIMILE  206.389.4511

1    Dated:    December 10, 2024

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

FENWICK & WEST LLP


By:  s/*Michael J. Sacksteder*
      Michael J. Sacksteder (Admitted *Pro Hac Vice*)
      555 California Street, 12th Floor
      San Francisco, CA 94104
      Telephone:        415.875.2300
      Facsimile:        415.281.1350
      Email:            msacksteder@fenwick.com

      Vigen Salmastlian (Admitted *Pro Hac Vice*)
      801 California Street
      Mountain View, CA 94041
      Telephone:        650.988.8500
      Facsimile:        650.938.5200
      Email:            vsalmastlian@fenwick.com

      Jessica M. Kaempf, WSBA No. 51666
      Jonathan G. Tamimi, WSBA No. 54858
      Hannah S. Reid, WSBA No. 61421
      401 Union Street, 5th Floor
      Seattle, WA 98101
      Telephone:        206.389.4510
      Facsimile:        206.389.4511
      Email:            jkaempf@fenwick.com
                        jtamimi@fenwick.com
                        hreid@fenwick.com

      *Attorneys for Plaintiff Databricks, Inc.*

DATABRICKS' OPPOSITION TO
MOTION TO DISMISS                    - 24 -
Case No. 2:24-CV-01417-JLR

1

**<u>LCR 7(e) and 7(g) WORD-COUNT CERTIFICATION</u>**

2      As required by Western District of Washington Local Civil Rules 7(e) and 7(g), I certify

3   that this Brief contains 8189 words.

4   Dated:  December 10, 2024

5                                    FENWICK & WEST LLP

6

7                                    By: *s/Michael J. Sacksteder*
                                        Michael J. Sacksteder (Admitted *Pro Hac Vice*)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DATABRICKS' OPPOSITION TO
MOTION TO DISMISS          - 25 -
Case No. 2:24-CV-01417-JLR

FENWICK & WEST LLP
401 UNION STREET, 5TH FLOOR
SEATTLE, WASHINGTON 98101
TELEPHONE 206.389.4510
FACSIMILE 206.389.4511