1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DATABRICKS, INC.,

                              Plaintiff,

        v.

JAMES WEISFIELD, et al.,

                              Defendants.

CASE NO. C24-1417JLR

ORDER

## I.    INTRODUCTION

This matter is before the court on Defendants Ascend Innovation Management, LLC, Mind Fusion, LLC, ByteWeavr, LLC, Ascend IP, LLC (collectively, "Corporate Entity Defendants"), James Weisfield, and Riad Chummun's (together with the Corporate Entity Defendants, "Defendants") motion to dismiss, or alternatively to transfer or stay, this case. (Mot. (Dkt. # 23); Reply (Dkt. # 38).) Plaintiff Databricks, Inc. ("Databricks") opposes Defendants' motion. (Resp. (Dkt. # 35).) The court has considered the parties'

1    submissions, the relevant portions of the record, and the applicable law.  Being fully

2    advised,[1] the court GRANTS in part and DENIES in part Defendants' motion.

3                            **II.    BACKGROUND**[2]

4        This case arises out of Databricks' allegation that Defendants conspired to file

5    sham patent lawsuits.  (*See generally* Compl. (Dkt. # 1).)  Specifically, Databricks alleges

6    that Mr. Weisfield and Mr. Chummun combined forces to use their decades of patent

7    experience to acquire "expired, facially invalid, and worthless patents," assign those

8    patents to underfunded shell companies, and cause those shell companies to file bad faith

9    patent infringement suits to extort nuisance settlements from technology companies like

10   Databricks.  (*Id.* at 1-2; *see id.* ¶¶ 12, 76, 107.)

11       Databricks asserts that, to "insulate themselves from any adverse judgments or

12   liabilities" resulting from the bad faith patent infringement lawsuits, Mr. Weisfield and

13   Mr. Chummun "cloak the true ownership and control of the patents" by "bury[ing] the

14   patent-holding entity . . . at the bottom of a multi-layer, shell company hierarchy"

15   consisting of the Corporate Entity Defendants and Republic Registered Agent, AI-Core

16   Technologies, Illumafinity, LLC, Accessify, LLC, Thinklogix, LLC, Slyde Analytics

17   LLC, Musicqubed Innovations, LLC, Crystal Mountain Communications, LLC, and

18   Fintegraph, LLC (collectively, the "Non-Party Corporate Entities"), all of which are

19

20   ───────────────

21       [1] Defendants requested oral argument (*see* Mot. at 1), but the court concludes that oral argument is not necessary to decide the motion.  *See* Local Rules W.D. Wash. LCR 7(b)(4).

22       [2] The following factual allegations are taken from Databricks' complaint and are accepted as true for purposes of considering Defendants' motion.

1    controlled by Mr. Weisfield and Mr. Chummun. (*Id.* at 2; *id.* ¶¶ 9-10, 18, 20, 22-23, 27,

2    29, 32, 35, 38, 41, 44, 47, 50, 104, 106, 123-25; *see also id.* ¶ 103 (corporate organization

3    chart).) This structure is designed to also shield the assets of the Corporate Entity

4    Defendants from any adverse judgments. (*See id.* ¶¶ 18, 20, 22, 105.)

5         Databricks is "one of dozens of companies targeted" by Defendants' scheme. (*Id.*

6    ¶¶ 11, 67-75, 137.) In *ByteWeavr v. Databricks, Inc*, No. 2:24-cv-00162-JRG-RSP (E.D.

7    Tex.) (the "ByteWeavr lawsuit"), Mr. Weisfield and Mr. Chummun, through ByteWeavr,

8    have asserted seven patents against Databricks: U.S. Patent Nos. 6,839,733 (the "'733

9    patent"); 7,949,752 (the "'752 patent"); 6,862,488 (the "'488 patent"); 6,965,897 (the

10   "'897 patent"); 7,082,474 (the "'474 patent"); RE42,153 (the "'153 patent"); 8,275,827

11   (the "'827 patent") (collectively, the "Asserted Patents").[3] (Compl. ¶ 80.) In Databricks'

12   view, the ByteWeavr lawsuit is "meritless" because each of the Asserted Patents is either

13   expired, "likely invalid[,]" or has not been infringed by Databricks. (*Id.* ¶¶ 83-89, 90,

14   130-36.) Databricks alleges it has suffered harm by expending resources to defend

15   against the ByteWeavr lawsuit and asserts that if it is successful in its defense, it will "be

16   forced to pierce through multiple sham entities to collect from" Defendants. (*Id.* ¶ 143;

17   *see id.* ¶ 147.)

18

19

20   _____

       [3] Databricks contends that the Asserted Patents were acquired from Intellectual
21   Ventures—Mr. Weisfield and Mr. Chummun's former employer—and that Mr. Weisfield and
     Mr. Chummun are required to pay Intellectual Ventures a percentage of any proceeds obtained
22   from the patent assertion lawsuits. (*See* Compl. ¶¶ 11-12, 118.)

1    Databricks now sues Defendants for civil conspiracy and violations of the

2    Washington Consumer Protection Act ("CPA"), ch. 19.86 RCW.  (*Id.* ¶¶ 139-147.)

3    Defendants contend that dismissal of Databricks' claims is warranted under the

4    *Noerr-Pennington* doctrine and Federal Rule of Civil Procedure 12(b)(6).  (*See* Mot.); *see*

5    *E.R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961); *United Mine*

6    *Workers of Am. v. Pennington*, 381 U.S. 657 (1965).  Defendants alternatively ask the

7    court to either stay this case pending the outcome of the infringement and validity issues

8    in the ByteWeavr lawsuit, or transfer this case to the Eastern District of Texas.  (Mot. at

9    19-21.)

10            **III.    ANALYSIS**

11    The court first discusses the applicable legal standard, and then addresses

12    Defendants' motion.

13    **A.    Legal Standard**

14    Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a complaint for

15    "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  A

16    Rule 12(b)(6) dismissal may be based on "the lack of a cognizable legal theory or the

17    absence of sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica*

18    *Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  A plaintiff's complaint must "contain

19    sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

20    face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*,

21    550 U.S. 544, 570 (2007)).  Although Federal Rule of Civil Procedure 8 does not require

22    "detailed factual allegations," it demands more than "an unadorned, the-defendant-

unlawfully-harmed-me accusation." *Id.* (citing *Twombly*, 550 U.S. at 555); *see* Fed. R. Civ. P. 8(a). The plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Twombly*, 550 U.S. at 555.

When considering a Rule 12(b)(6) motion, the court must accept the nonmoving party's well-pleaded factual allegations as true and draw all reasonable inferences in favor of the non-moving party. *See Hines v. Youseff*, 914 F.3d 1218, 1227 (9th Cir. 2019). The court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences[.]" *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

**B.    The Patent Troll Prevention Act**

As a preliminary matter, Defendants seek dismissal of Databricks' claim under the Patent Troll Prevention Act ("PTPA"), RCW 19.350.010, "[t]o the extent that a PTPA claim is alleged in the complaint[.]" (Mot. at 5.) Since Defendants filed their motion, however, the parties have agreed that Databricks has not brought a claim under the PTPA. (Resp. at 8 ("Databricks' complaint alleges no violation of the PTPA"); Reply at 2 ("Defendants accept Databricks'[] stipulation that it has no claim under the []PTPA."); *see also* Compl. ¶¶ 139-147 (pleading causes of action for civil conspiracy and CPA violations).) Accordingly, the court denies this portion of Defendants' motion as moot.

**C.    The *Noerr-Pennington* Doctrine**

Defendants assert that dismissal of Databricks' complaint is warranted under the *Noerr-Pennington* doctrine. (*See* Mot. at 6-14.) The *Noerr-Pennington* doctrine "is a

1   rule of statutory construction that requires courts to construe statutes to avoid burdening

2   conduct that implicates the protections of the Petition Clause[4] of the First Amendment."

3   *United States v. Koziol*, 993 F.3d 1160, 1171 (9th Cir. 2021).  Under the doctrine, a

4   claimant's act of petitioning the government is presumptively immune from liability

5   against certain types of statutory claims.  *Relevant Grp., LLC v. Nourmand*, 116 F.4th

6   917, 927 (9th Cir. 2024); *see also Cal. Motor Transp. Co. v. Trucking Unlimited*, 404

7   U.S. 508, 511 (1972) (applying the doctrine to petitioning conduct before administrative

8   bodies and the judiciary).  *Noerr-Pennington* immunity was premised on antitrust claims;

9   however, subsequent cases have extended the doctrine outside of the antitrust context,

10  including in patent infringement cases.  *See Globetrotter Software, Inc. v. Elan Computer*

11  *Grp., Inc.*, 362 F.3d 1367, 1368 (Fed. Cir. 2004).

12      The *Noerr-Pennington* doctrine bars a plaintiff's state law claims based on a

13  defendant's bona fide efforts to seek redress from the judiciary.  *Clipper Exxpress v.*

14  *Rocky Mountain Motor Tariff Bureau, Inc.*, 690 F.2d 1240, 1251 (9th Cir. 1982); *see also*

15  *Washington v. Landmark Tech. A, LLC*, 637 F. Supp. 3d 1154, 1163 (W.D. Wash. 2022)

16  (assessing whether *Noerr-Pennington* immunity immunized defendant's prelitigation

17  activity from plaintiff's CPA and PTPA claims).  To overcome *Noerr-Pennington*

18  immunity, a plaintiff must establish that the defendant's litigation activity is merely a

19  "sham."  *Relevant*, 116 F.4th at 928.  The Ninth Circuit has identified three circumstances

20

21

22  [4] The Petition Clause protects "the right of the people . . . to petition the government for a redress of grievances."  U.S. Const. amend. I.

1    in which the sham litigation exception applies to overcome a defendant's *Noerr-*

2    *Pennington* immunity:

> [F]irst, where the lawsuit is objectively baseless and the defendant's motive
> in bringing it was unlawful, *Pro. Real Est. Invs., Inc. v. Columbia Pictures
> Indus., Inc.*, 508 U.S. 49, 54 (1993) ("*PREI*"); second, where the conduct
> involves a series of lawsuits "brought pursuant to a policy of starting legal
> proceedings without regard to the merits" and for an unlawful purpose,
> *USS-POSCO Indus. v. Contra Costa Cnty. Bldg. & Constr. Trades Council*,
> 31 F.3d 800, 810-11 (9th Cir. 1994) ("*POSCO*"); and third, if the allegedly
> unlawful conduct "consists of making intentional misrepresentations to the
> court, litigation can be deemed a sham if 'a party's knowing fraud upon, or its
> intentional misrepresentations to, the court deprive the litigation of its
> legitimacy.'" *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 938 (9th Cir. 2006).

9    *Relevant*, 116 F.4th at 928 (full citations added).  To successfully plead a sham exception,

10   "a plaintiff's complaint [must] contain specific allegations demonstrating that the

11   *Noerr-Pennington* protections do not apply."  *Boone v. Redevelop. Agency of City of San*

12   *Jose*, 841 F.2d 886, 894 (9th Cir. 1988).  "Conclusory allegations are insufficient to strip

13   [a defendant] of [its] *Noerr-Pennington* [immunity]."  *Id.*  If a plaintiff fails to plausibly

14   plead that the defendant's lawsuit is not protected by the *Noerr-Pennington* doctrine, the

15   court must dismiss the case.  *See Sosa*, 437 F.3d at 931-33, 942.

16       Databricks' CPA and civil conspiracy claims are premised on Defendants'

17   allegedly "unlawful scheme to extort nuisance settlements by making patent infringement

18   assertions in bad faith[.]"  (Compl. at 1; *see also* Resp. at 13 (stating that Databricks'

19   "core allegation[]" is that Defendants "sued Databricks [in the ByteWeavr suit] not to

20   seek a resolution on the merits, but to leverage Databricks' defense costs into a

21   settlement").)  These allegations place the *Noerr-Pennington* doctrine squarely at issue

22   here.  *See Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*,

776 F.3d 1343, 1349-50 (Fed. Cir. 2014) (affirming *Noerr-Pennington* doctrine

immunized patentee from claimant's tortious interference and RICO claims when

claimant alleged patentee filed "allegedly frivolous infringement suits . . . in an attempt to

obtain nuisance settlements").  The parties dispute whether Databricks has plausibly

pleaded that the ByteWeavr lawsuit falls within a sham litigation exception and thus

overcomes Defendants' *Noerr-Pennington* immunity.  (*See* Mot. at 6-14; Resp. at 9-16);

*see Relevant*, 116 F.4th at 928.

     The court recognizes that some district courts have declined to apply the *Noerr-*

*Pennington* doctrine at the motion to dismiss stage when "the factual record remains

undeveloped and insufficient for the purpose of determining whether a 'sham litigation'

has been filed." *Takeda Pharm. Co. Ltd. v. Zydus Pharm. (USA) Inc.*, 358 F. Supp. 3d

389, 394-95 (D.N.J. 2018); *but see In re Revlimid & Thalomid Purchaser Antitrust Litig.*,

No. CV 19-7532 (ES) (MAH), 2024 WL 2861865, at *85-86 (D.N.J. June 6, 2024)

(dismissing complaint under *Noerr-Pennington* doctrine).  However, even in the face of a

*Noerr-Pennington* challenge, a plaintiff must satisfy the requisite pleading standards to

survive dismissal.  *Cf. Landmark*, 637 F. Supp. 3d at 1163 (declining to consider *Noerr-*

*Pennington* immunity where plaintiff "adequately plead[ed]" a sham litigation

exception). The court analyzes the parties' *Noerr-Pennington* arguments with this

framework in mind.

     Databricks contends that it has plausibly pleaded (1) the *PREI* sham exception,

(2) the *POSCO* sham exception, and (3) the intentional misrepresentation sham exception

to *Noerr-Pennington* immunity, or in the alternative that (4) its claims may proceed under

1    the "overall scheme" exception of *Clipper Exxpress*, 690 F.2d at 1263.  The court

2    addresses each of these arguments below.

3        1.  *The PREI Sham Exception*

4            In *PREI*, the United States Supreme Court outlined a two-part test for determining

5    whether litigation is a "sham."  *See PREI*, 508 U.S. at 60.  Under the first part of the test,

6    "the lawsuit must be objectively baseless in the sense that no reasonable litigant could

7    realistically expect success on the merits."  *Id.*  This objective component considers

8    whether a reasonable litigant had probable cause to bring the lawsuit on which the

9    plaintiff's state law claim is based.  *Id.* at 62.  If a litigant could conclude that the lawsuit

10   as a whole "is reasonably calculated to elicit a favorable outcome, the suit is immunized

11   under *Noerr*[-*Pennington*] and a [plaintiff's claim] premised on the sham exception must

12   fail."  *Id.*  "[A]n allegation that a single claim is objectively baseless does not

13   bring . . . [the] filing of the entire complaint within the sham exception."  *Meridian*

14   *Project Sys., Inc. v. Hardin Const. Co., LLC*, 404 F. Supp. 2d 1214, 1222 (E.D. Cal.

15   2005) (citation omitted); *PREI*, 508 U.S. at 60 (stating that the "*lawsuit* must be

16   objectively baseless") (emphasis added).

17           Under the second part of the *PREI* test, the court considers the litigant's subjective

18   motivation for filing the lawsuit, "focus[ing] on whether the baseless lawsuit conceals 'an

19   attempt to interfere *directly* with the business relationships of a competitor."  *PREI*, 508

20   U.S. at 60-61 (emphasis in original).  However, "[o]nly if challenged litigation is

21   objectively meritless may a court examine the litigant's subjective motivation."  *Id.* at 60.

22

1    Defendants assert that Databricks has failed to plausibly plead that the ByteWeavr

2    lawsuit is objectively baseless under *Noerr-Pennington*.  (Mot. at 6-14.)  Databricks

3    contends that it has plausibly pleaded that the ByteWeavr lawsuit is objectively baseless

4    because, in Databricks' view, the Asserted Patents are either (1) expired, (2) "likely

5    invalid," or (3) not infringed.  (Resp. at 10-13.)  The court examines these arguments in

6    turn.

7        *a.  Databricks' Expired Patent Allegations*

8    Databricks argues that the ByteWeavr lawsuit is objectively baseless because six

9    of the seven Asserted Patents expired between 2020 and 2023.  (Compl. ¶ 82; *see id.*

10   ¶¶ 83-88 (alleging the expiration date of the Asserted Patents).)  Databricks further

11   contends that Mr. Weisfield and Mr. Chummun knew that each of these patents was

12   expired or would expire within the calendar year before they acquired them.  (*Id.* ¶ 89.)

13   These allegations, however, do not show that Defendants' patent infringement suit

14   is objectively baseless.  Even if the Asserted Patents expired between 2020 and 2023, "a

15   patentee may recover damages for any infringement committed within six years of the

16   filing of the patent infringement claim."  *SCA Hygiene Prods. Aktiebolag v. First Quality*

17   *Baby Prods., LLC*, 580 U.S. 328, 336 (2017); 35 U.S.C. § 286 (providing six-year

18   limitations period); *Genetics Institute, LLC v. Novartis Vaccines & Diagnostics, Inc.*, 655

19   F.3d 1291, 1299 (Fed. Cir. 2011) ("[A]n expired patent may form the basis of an action

20

21

22

1    for past damages subject to the six-year limitation under 35 U.S.C. § 286.").[5]

2    Consequently, lawsuits to pursue patent rights that are initiated after a patent's expiration

3    are not objectively baseless on those grounds alone. *See Marketing Displays, Inc. v.*

4    *TrafFix Devices, Inc*., 200 F.3d 929, 941 (6th Cir. 1999), *rev'd on other grounds*, 532

5    U.S. 23 (2001) (holding suit asserting trade dress rights after patent expired is not

6    objectively baseless and cannot give rise to antitrust liability).

7        The ByteWeavr lawsuit was initiated on March 8, 2024. (Resp. at 6.) Databricks

8    agrees that under 35 U.S.C. § 286, ByteWeavr may seek damages for infringement of the

9    Asserted Patents that occurred between March 8, 2018, and the date the patents expired.

10   (*See id*.) Databricks, however, contends that Defendants' "expected damages . . . would

11   be severely limited, and likely much lower than Databricks' cost of defending" the

12   ByteWeavr lawsuit. (*Id.* (citing Compl. ¶¶ 64, 82-90, 102; 60-77).) Defendants respond

13   that Databricks' assertion "raises an issue about the *quantum* of damages to be awarded"

14   rather than the merits of the ByteWeavr lawsuit. (Reply at 3.) The court agrees with

15   Defendants. The amount of damages that could be recovered from the ByteWeavr

16   lawsuit has no bearing on whether Defendants could "realistically expect success on the

17   merits" of their claims in the first instance. *See PREI*, 508 U.S. at 60. The court

18

19

20   _____

     [5] The court applies Federal Circuit law to "substantive and procedural issues unique to
     and intimately involved in federal patent law," and Ninth Circuit law to other substantive and
     procedural issues. *Am. GNC Corp. v. Nintendo Co.*, No. C24-00302TL, 2024 WL 115511, at *2
21   (W.D. Wash. Jan. 10, 2024) (quoting *Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*, 830 F.3d
     1335, 1338 (Fed. Cir. 2016)).

22

1    therefore cannot conclude that the ByteWeavr lawsuit is objectively baseless on this

2    basis.

3          b.  *Databricks' Invalid Patent Allegations*

4          Databricks alleges that "[a]ll seven" of the Asserted Patents are "likely invalid."

5    (Compl. ¶ 90.)  However, Databricks' complaint only contains specific allegations

6    regarding the invalidity of the '752, '733 and the '827 patents.  (*See id.* ¶¶ 91-102.)

7    Because the court accepts as true only Databricks' well-pleaded allegations

8    demonstrating its entitlement to relief, *Twombly*, 556 U.S. at 678-79, the court will

9    consider only Databricks' invalidity arguments regarding the '752, '733 and the '827

10   patents.  The court notes that even if Databricks plausibly pleads that the '752, '733, and

11   '827 patents are invalid, such allegations would not establish that the *entire* ByteWeavr

12   lawsuit is objectively baseless and therefore would not suffice to overcome Defendants'

13   *Noerr-Pennington* immunity.  *See Meridian*, 404 F. Supp. 2d at 1222; *PREI*, 508 U.S. at

14   60.  Because the court grants Databricks leave to amend its complaint (*see infra* Section

15   F), the court addresses Databricks' invalidity arguments below.

16          i.   The '752 and '733 Patents

17          ByteWeavr has asserted claims 24 and 25 of the '752 patent against Databricks.

18   (Compl. ¶ 91.)  Databricks contends that the '752 patent is "likely invalid" because the

19   United States Patent and Trademark Office ("USPTO"), in a previous *inter partes review*

20   ("IPR") action,[6] issued an initial finding that an alleged infringer of the '752 patent

21

22   _____
          [6] Neither Databricks nor ByteWeavr were involved in this IPR proceeding.  (*See* Compl.
     ¶¶ 91-94.)

1  "demonstrated a reasonable likelihood of success of prevailing on its assertion" that

2  claims 24 and 25 of the '752 patent "would have been obvious." (Compl. ¶¶ 91-94.)

3  And from the USPTO's initial determination with respect to the '752 patent, Databricks

4  infers that claims 37-43 of the '733 patent—also asserted by ByteWeavr against

5  Databricks—are "likely invalid" because "the '733 patent claims are broader than claims

6  24 and 25 of the '752 patent." (*Id.* ¶ 95.) Databricks therefore contends that Defendants

7  knew that the '752 and '733 patents were "likely invalid" before commencing the

8  ByteWeavr lawsuit. (*Id.* ¶¶ 91-94.)

9       Defendants assert that Databricks' allegations regarding the '752 patent and the

10  '733 patent do not plausibly demonstrate that the ByteWeavr lawsuit is objectively

11  meritless. (Mot. at 8-9.) The court agrees. A patent is presumed valid until a final

12  decision concludes that it is invalid. 35 U.S.C. § 282(a); *see Taiwan Semiconductor Mfg.*

13  *Co v. Tela Innovations, Inc.*, No. 14-CV-00362-BLF, 2014 WL 3705350, at *5 (N.D.

14  Cal. July 24, 2014) (applying presumption of validity at pleading stage); *Revlimid*, 2024

15  WL 2861865, at *86 (patent presumed valid at pleading stage when "validity ha[d] not

16  yet been litigated"); *see Braintree Laboratories, Inc. v. Schwarz Pharma, Inc.*, 568 F.

17  Supp. 2d 487, 494, 497 (D. Del. 2008) (declining to conclude that patent owner "'should

18  have known of its patent's invalidity'" when the patent "ha[d] not been adjudicated by

19  any court (or the USPTO on reexamination)"). Databricks does not allege that there has

20  been a trial on the merits or a final decision with respect to the '752 and '733 patents.

21  (*See generally* Compl.; *see* Resp. at 5.) Rather, Databricks avers that the '752 patent is

22  "likely invalid" in light of the USPTO's initial findings, and that the '733 patent is

1    therefore also "likely invalid."  But initial findings by the USPTO are not determinative

2    of a patent's validity for purposes of considering a motion to dismiss.  *See Realtek*

3    *Semiconductor Corp. v. MediaTek, Inc.*, --- F. Supp. 3d ---, 2025 WL 744038, at *9 n.8

4    (N.D. Cal. Mar. 7, 2025); *cf. Nomadix, Inc. v. Guest-Tek Interactive Entmt. Ltd.*, No. CV

5    16-08033-AB (FFMx), 2020 WL 3023187, at *7 (C.D. Cal. Mar. 30, 2020) ("courts have

6    held that the institution of *inter partes review* has little probative value in an action to

7    determine a patent's validity").  Accordingly, even accepting Databricks' allegations as

8    true, it has not established that ByteWeavr's assertion of the '752 and '733 patents

9    against Databricks is objectively baseless such that no reasonable litigant could expect

10   success on the merits of the ByteWeavr lawsuit.

11                    ii.    The '827 Patent

12          ByteWeavr has also asserted claims 2 and 14 of the '827 patent against

13   Databricks.  (Compl. ¶ 96.)  The USPTO previously held claims 1, 3-9, 13, 15, 16, and

14   18-21 of the '827 patent invalid in a final written decision.  (*Id.* ¶ 98 (citing *ECM Corp.*

15   *et al. v. Intell. Ventures I, LLC*, IPR2017-00439, Paper 50 (June 20, 2018).)  Claims 2 and

16   14 of the '827 patent were not challenged in the USPTO proceeding; however,

17   Databricks contends that claims 2 and 14 are also "likely invalid" because they "depend

18   upon" and are "not meaningfully different from" "invalid claims 1 and 13[.]"  (*Id.*

19

20

21

22

1   ¶¶ 99-100.) Databricks argues that the ByteWeavr lawsuit is objectively baseless on

2   these grounds.[7] (*See id.* ¶¶ 96-101.)

3        Even accepting Databricks' allegations as true, the court cannot conclude that

4   ByteWeavr's assertion of claims 2 and 14 of the '827 patent was objectively baseless.

5   The law is clear that "[e]ach claim of a patent . . . shall be presumed valid independently

6   of the validity of other claims" and that "dependent . . . claims shall be presumed valid

7   even though dependent upon an invalid claim." 35 U.S.C. § 282(a); *cf. Mobile Acuity*

8   *Ltd. v. Blippar Ltd.*, 110 F.4th 1280, 1291 (Fed. Cir. 2014) (applying this principle at

9   pleading stage in patent eligibility suit).[8] Because Databricks' invalidity allegations

10  "stop[] short of the line between possibility and plausibility," *Iqbal*, 556 U.S. at 678,

11  Databricks cannot overcome *Noerr-Pennington* immunity on this basis.

12

-------------------

13      [7] ByteWeavr asserted and subsequently withdrew claims 8 and 20 of the '827 patent
    against Databricks, both of which were previously held invalid in the USPTO's final written
14  decision. (Compl. ¶ 98 (citing *ECM Corp.*, IPR2017-00439, Paper 50).) Databricks contends
    that the court should consider ByteWeavr's initial assertion of claims 8 and 20 against
15  Databricks as part of the court's *Noerr-Pennington* analysis. (Resp. at 10-11.) The court is not
    persuaded by this argument. Because the parties agree that ByteWeavr voluntarily withdrew
16  claims 8 and 20 of the '827 patent in the ByteWeavr lawsuit (*see* Compl. ¶ 96; Mot. at 9-10), and
    Databricks does not dispute that ByteWeavr asserted these claims against Databricks in error
17  (*see generally* Resp.), the court does not consider these claims.

18      [8] Databricks contends that the presumption of patent validity does not apply in this case
    because Defendants "were aware that claims related to the [Asserted Patents] had previously
19  been invalidated." (Resp. at 12 (citing *Kimberly-Clark Worldwide Inc. v. First Quality Baby
    Prods. LLC*, No. 14-cv-1466, 2015 WL 1582368, at *11 (E.D. Wis. Apr. 9, 2015)).)
20  *Kimberly-Clark* is distinguishable from the case at bar. In that case, the court declined to apply
    *Noerr-Pennington* immunity when the patent owner commenced a patent infringement action
21  despite that a final written order had previously declared "each and every claim of" the parent
    patent—which the asserted patent was "virtually identical to"—as obvious, and the claims added
22  to the asserted patent were also "well known in the prior art." *Kimberly-Clark*, 2015 WL
    1582368, at *7; *see id.* at *11.

1

          *c.  Databricks' Non-Infringement Allegations*

2
        Databricks also alleges that Mr. Weisfield and Mr. Chummun, through the

3
ByteWeavr lawsuit, "asserted claims [against Databricks] they know they cannot prove

4
infringed."  (Resp. at 7; *see* Compl. ¶¶ 130-35.)  Specifically, Databricks contends that

5
certain claims of the '488, '752, and '733 patents concern "processes or equipment used

6
in a pharmaceutical or biotechnology manufacturing facility" or software agents that

7
perform ministerial tasks—neither of which, in Databricks' view, apply to Databricks.[9]

8
(*See* Compl. ¶¶ 130-35.)  But the asserted claims of the '488, '752, and '733 patents have

9
not yet been construed by a court.  Therefore, under *PREI*, the court cannot conclude that

10
ByteWeavr's patent infringement case is objectively baseless on these grounds.  *See*

11
*Breville Pty. Ltd. v. Storebound LLC*, No. 12-CV-01783-JST, 2013 WL 1758742, at *8

12
(N.D. Cal. Apr. 24, 2013) (declining to find patent infringement suit objectively meritless

13
when the patent's claims had not yet been construed).

14
        Consequently, even accepting Databricks' allegations as true, the court cannot find

15
that Databricks has plausibly pleaded sufficient facts establishing that the entirety of the

16
ByteWeavr lawsuit was objectively baseless such that "no reasonable litigant could

17
reasonably expect success on the merits" of the suit.  *See PREI*, 508 U.S. at 60 (the

18
"lawsuit must be objectively baseless"); *Meridian Project*, 404 F. Supp. 2d at 1222.

19

20

21

22

      [9] Like Databricks' invalidity claims (*see supra* Section C.1.b), Databricks' non-infringement allegations with respect to the '488, '752, and '733 patents, even if plausible, would not overcome Defendants' *Noerr-Pennington* immunity because these allegations do not render the entire ByteWeavr lawsuit objectively baseless. *See Meridian*, 404 F. Supp. 2d at 1222; *PREI*, 508 U.S. at 60.

1    Because Databricks has not plausibly alleged that the patent infringement suit is

2    objectively baseless, the court cannot consider Databricks' allegations regarding

3    Defendants' subjective motivation for filing the patent infringement suit.  *PREI*, 508 U.S.

4    at 60-61.  Accordingly, the court concludes that Databricks has not plausibly alleged that

5    the ByteWeavr lawsuit constitutes sham litigation under the *PREI* exception.[10]

6        2.  *The POSCO Sham Exception*

7        Databricks also alleges that it has overcome Defendants' *Noerr-Pennington*

8    immunity under the *POSCO* sham exception.[11]  This exception applies where a

9    defendant's conduct involves a "series of lawsuits . . . brought pursuant to a policy of

10   starting legal proceedings without regard to the merits or for the purpose of injuring a

11   market rival."  *POSCO*, 31 F.3d at 810-11 (citation omitted).  Databricks' complaint is

12   premised on Defendants' filing of allegedly "meritless" patent infringement lawsuits.

13   (*See* Compl. at 1, *see id.* ¶¶ 105, 129, 136, 143, 147.)  Databricks alleges that Defendants,

14   through ByteWeavr, have filed one patent infringement suit against Databricks—the

15   ByteWeavr lawsuit pending in the Eastern District of Texas.  (*See id.* ¶¶ 24, 80.)  But one

16   alleged sham suit "cannot amount to a 'whole series of legal proceedings'" within the

17

18   _____

19       [10] The parties agree that courts apply the "objectively baseless" test of *Noerr-Pennington* to determine whether federal patent law preempts state law claims.  (*See* Mot. at 3; Resp. at 16);

20   *see also Globetrotter*, 362 F.3d at 1368 ("Because Globetrotter's actions were not objectively baseless, state-law claims arising from Globetrotter's communications regarding potential patent litigation were preempted.").  Accordingly, under the court's *Noerr-Pennington* analysis,

21   Databricks' CPA and civil conspiracy are also preempted by federal patent law.

22       [11] The *POSCO* exception is derived from *California Motor Transport*.  (*See POSCO*, 31 F.3d at 810-11 (citing *California Motor Transp.*, 404 U.S. at 510).)

1   meaning of the *POSCO* exception.  *Int'l Longshore & Warehouse Union v. ICTSI Or.,*

2   *Inc.*, 863 F.3d 1178, 1187 (9th Cir. 2017).  Accordingly, the *POSCO* exception does not

3   apply on this basis.

4        Databricks asserts that the *POSCO* sham exception applies because Defendants

5   have filed "dozens of patent lawsuits against an equal number of defendants."  (Compl.

6   ¶ 67; *see also id.* at ¶¶ 68-75, 81, 137 (alleging that Mr. Weisfield and Mr. Chummun

7   have caused certain Corporate Entity Defendants and Non-Party Corporate Entities to file

8   patent infringement lawsuits against various defendants).)  The court is not persuaded.

9   The *POSCO* exception applies in cases where the alleged series of litigation was filed

10  *against the plaintiff.  See, e.g.*, *POSCO*, 31 F.3d at 811 (series exception applied when

11  defendants filed 29 lawsuits against plaintiffs); *Relevant*, 116 F.4th at 929 (considering

12  whether series exception applied when "[d]efendants challenged four of [*plaintiff's*]

13  projects" in four separate proceedings (emphasis added)); *Intell. Ventures I LLC v. Cap.*

14  *One Fin. Corp.*, 280 F. Supp. 3d 691, 712 (D. Md. 2017), *aff'd*, 937 F.3d 1359 (Fed. Cir.

15  2019) ("Here, there have been only two cases that IV has brought against Capital One.

16  While it is true that IV has sued various other entities in other courts, that litigation does

17  not make its two instances of litigation against Capital One a series.").  Because

18  Databricks has not pleaded sufficient facts to establish that the *POSCO* exception is

19  applicable, Databricks cannot overcome Defendants' *Noerr-Pennington* immunity on this

20  ground.

21

22

1    3.    _The Intentional Misrepresentation Sham Exception_

2        Databricks also invokes the third sham exception, which forecloses

3   _Noerr-Pennington_ immunity where "a party's knowing fraud upon, or its intentional

4   misrepresentations to, the court deprive the litigation of its legitimacy."  _Sosa_, 437 F.3d at

5   938 (citations omitted).  Specifically, Databricks asserts that Mr. Weisfield and Mr.

6   Chummun "have caused Byte[W]eavr to file conflicting information about its ownership

7   and control" in the patent infringement case.  (Compl. ¶ 24; _see_ Resp. at 15-16.)  In

8   support, Databricks alleges that ByteWeavr initially represented that it "is a wholly

9   owned subsidiary of Republic Register Agent, LLC [("RRA")], which is itself a wholly

10  owned subsidiary of Mind Fusion, LLC" but subsequently filed updated disclosures

11  representing that ByteWeavr "is a wholly owned subsidiary of Mind Fusion, LLC . . . ,

12  which itself is a wholly owned subsidiary of Ascend Innovation Management, LLC[.]"[12]

13  (_Id._ (quoting _ByteWeavr, LLC v. Databricks, Inc_., No. 2:24-cv-00162-JRG-RSP (E.D.

14  Tex.), Dkt. ## 3, 29 ("Rule 7.1 Disclosures").)  Databricks further contends that

15  ByteWeavr has now represented in a separate litigation that RRA "is merely

16  ByteWeavr's agent for service in Texas and **has no relation to Byte[W]eavr**."  (Compl.

17  ¶ 24 (quoting _ByteWeavr, LLC v. Cloudera, Inc_., No. 1:24-cv-00261-RP (W.D. Tex.),

18  Dkt. # 57, at 7 ("ByteWeavr's Partial Motion to Dismiss") (emphasis in original)).)

19

20  _____

21  [12] The court observes that Exhibit 3 to Databricks' complaint shows that Ascend Innovation Management, LLC is listed as "Governor" of Mind Fusion LLC.  (_See_ Compl., Ex. 3 (Dkt. 1-3).)  In considering Defendants' motion to dismiss, the court may consider "allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice."  _Akhtar v. Mesa_, 698 F.3d 1202, 1212 (9th Cir. 2012) (citation omitted).

1    Databricks' complaint, however, is devoid of any allegations explaining *how* these

2    misrepresentations deprived the ByteWeavr lawsuit of its legitimacy.  (*See generally*

3    Compl.)  Databricks contends that these misrepresentations "further[] [Defendants']

4    scheme 'to cloak the true ownership of the patents[,]'" and "undermine those courts'

5    ability to administer sanctions or award attorneys' fees to deter frivolous infringement

6    assertions."  (Resp. at 15-16 (quoting Compl. ¶¶ 106, 123, 125-26, 140-42).)  But the

7    ByteWeavr lawsuit is still pending and Databricks does not allege that sanctions or

8    attorney's fees have been awarded.  The court concludes that Databricks' allegations are

9    "insufficiently specific" to plausibly plead the intentional misrepresentation exception.

10   *See NM LLC v. Keller*, C24-5181TMC, 2024 WL 4336428, at *4 (W.D. Wash. Sept. 27,

11   2024); *see also Kottle v. Nw. Kidney Centers*, 146 F.3d 1056, 1064 (9th Cir. 1998)

12   ("[V]ague allegations of misrepresentation are therefore insufficient to overcome

13   *Noerr-Pennington* protection").  Therefore, the third sham exception does not apply.

14       Databricks has failed to plausibly plead that a sham litigation exception applies in

15   this case.  Defendants' litigation activities in the ByteWeavr lawsuit are therefore

16   presumed immune under *Noerr-Pennington*.  Because Databricks' CPA and civil

17   conspiracy claims are based its expenditure of resources defending against the

18   ByteWeavr lawsuit (*see* Compl. ¶¶ 143, 147), these claims are barred under *Noerr-*

19   *Pennington*.

20   **C.    The *Clipper* "Overall Scheme" Exception**

21       Databricks further contends that *Noerr-Pennington* "does not immunize

22   Defendants' scheme in its entirety."  (Resp. at 17.)  Relying primarily on *Clipper*

1   *Exxpress*, 690 F.2d at 1265, Databricks argues that *Noerr-Pennington* immunity does not

2   apply here because Defendants' litigation activity is part of a "larger, overall scheme" of

3   unlawful conduct.  (*Id.*)  Defendants counter that the *Clipper* exception does not apply

4   because Databricks "does not allege a violation of the WCPA apart from the protected

5   *ByteWeavr v. Databricks* patent case."  (Reply at 7.)

6          In *Clipper Exxpress*—an antitrust case—the plaintiff, a freight forwarding

7   company, alleged that the defendant trucking company had engaged in sham rate protests

8   and had provided fraudulent information to a regulatory agency as part of a larger scheme

9   to stifle competition that included price-fixing and customer allocation.  *Id.* at 1246-63.

10  The *Clipper Exxpress* court recognized that "[g]enuine efforts to induce governmental

11  action are shielded by *Noerr*[-*Pennington*] even if their express and sole purpose is to

12  stifle or eliminate competition."  *Id.* at 1254.  Nevertheless, the court also observed that

13  "when . . . the petitioning activity is but part of a larger overall scheme to restrain trade,

14  there is no *overall* immunity."  *Id.* at 1263-64 (emphasis added).  Rather, *Noerr-*

15  *Pennington* "provides immunity only for the narrow petitioning activity, if done with the

16  requisite intent to influence government action."  *Id.* at 1265.  To satisfy the *Clipper*

17  exception in a patent infringement case, a plaintiff must plausibly plead that the

18  defendant's "overall scheme . . . exists [a]part from allegations that directly relate to the

19  bad faith [patent] prosecution charges."  *Handgards, Inc. v. Ethicon, Inc.*, 601 F.2d 986,

20  994, 996 (9th Cir. 1979); *see also Philips N. Am., LLC v. Summit Imaging Inc.*, No. C19-

21  1745JLR, 2020 WL 6741966, at *4 (W.D. Wash. Nov. 16, 2020) (dismissing antitrust

22

1  claims "under the *Noerr-Pennington* doctrine to the extent they are premised on Philips's

2  litigation activity").

3       Databricks alleges that the *Clipper* exception applies because "Defendants'

4  scheme involves more than filing sham patent lawsuits." (Resp. at 17.) Specifically,

5  Databricks asserts that Defendants "target low-value (invalid or expired) patents[,]" and

6  utilize a "complicated corporate structure . . . to erect artificial barriers to recovery[.]"

7  (*Id.*) But neither Defendants' acquisition of invalid or expired patents, nor the use of a

8  "complicated corporate structure" to bar recoveries, "exists [a]part from [Databricks']

9  allegations that directly relate to [Defendants'] bad faith [patent] prosecution charges."

10 *See Handgards*, 601 F.2d at 994. Rather, Databricks' claims are premised on

11 Defendants' litigation activity. (*See* Compl. ¶¶ 143, 147); *see Philips*, 2020 WL

12 6741966, at *4. Consequently, the court concludes that the *Clipper* exception does not

13 apply on the facts as alleged.

14      Considering the foregoing, Defendants' motion to dismiss is granted under the

15 *Noerr-Pennington* doctrine. Because the court grants Databricks leave to amend its

16 complaint, the court will briefly address Defendants' other asserted bases for dismissal.

17 **D.     Dismissal for Lack of Standing**

18      Defendants also aver that dismissal is warranted because Databricks is not a

19 Washington corporation and therefore does not have standing to pursue a Washington

20 CPA claim. (*See* Mot. at 16-17; *see also* Compl. ¶ 2 (stating that Databricks is a

21 Delaware corporation with its principal place of business in California).) Defendants'

22 argument appears to be based on *Schnall v. AT&T Wireless Servs., Inc.*, which held that

1    "CPA claims by nonresidents for acts occurring outside of Washington can[not] be

2    entertained[.]"  225 P.3d 929, 938 (Wash. 2010); (*see* Mot. at 16 (citing *Schnall* and cases

3    based on *Schnall*).)  The Washington Supreme Court, however, withdrew its original

4    opinion in *Schnall* and reissued an opinion omitting all discussion regarding the viability

5    of a nonresident's CPA claim.  *See Schnall v. AT & T Wireless Servs., Inc.*, 259 P.3d 129

6    (Wash. 2011).  In a subsequent case, the Washington Supreme Court held that

7    nonresident plaintiffs may pursue a CPA claim against Washington residents for unfair

8    and deceptive acts committed outside of Washington.  *Thornell v. Seattle Serv. Bureau,*

9    *Inc.*, 363 P.3d 587, 591-92 (Wash. 2015).   Accordingly, dismissal of Databricks'

10    complaint is not warranted based on its nonresident status alone.

11         Defendants also contend that Databricks lacks Article III standing to bring this suit

12    because it has failed to establish that it suffered an injury-in-fact.  (Mot. at 17.)  To plead

13    an injury-in-fact, Databricks must plausibly allege "an invasion of a legally protected

14    interest" that is both "concrete and particularized" as well as "actual or imminent, not

15    conjectural or hypothetical.  *Harbers v. Eddie Bauer, LLC*, 415 F. Supp. 3d 999, 1005

16    (W.D. Wash. 2019) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).

17    Databricks alleges it suffered harm from "Defendants' ongoing violations of the [CPA]"

18    by "expending resources, including legal fees and costs, to defend against Defendants'

19    meritless lawsuit filed through their Byte[W]eavr entity."  (Compl. ¶ 143; *see* Resp. at

20    21; *see also* Compl. ¶ 147 (alleging similar injury in its civil conspiracy claim).)  In

21    Defendants' view, Databricks' alleged injuries are "purely conjectural and hypothetical,

22    not actual or imminent" because they are "contingent at least on Databricks becoming the

1    prevailing party" in the ByteWeavr lawsuit, which is set for trial in November 2025.

2    (Mot. at 17 (internal quotations omitted); Reply at 9-10.)

3    The court agrees with Defendants. Databricks' pleaded injuries depend on the

4    ByteWeavr lawsuit being meritless in the first instance and are therefore hypothetical at

5    this juncture. *Lujan*, 504 U.S. 555, 560. Databricks offers no other allegations from

6    which the court could reasonably infer that Databricks has suffered a concrete,

7    particularized, and actual or imminent injury. (*See generally* Compl., Resp.); *see Lujan*,

8    504 U.S. at 560. Accordingly, the court concludes that Databricks has failed to plausibly

9    allege it has standing to sue.

10   **E.    Rule 12(b)(6) Dismissal for Failure to State a Claim**

11   Finally, Defendants argue that Databricks' CPA and civil conspiracy claims

12   should be dismissed for failure to state a claim. (Mot. at 15-16; Reply at 8-10.) The

13   court briefly addresses Defendants' arguments in turn.

14       1.   *Databricks' CPA Claim*

15   To survive a motion to dismiss for failure to state a CPA claim, Databricks must

16   plausibly plead (1) an unfair or deceptive act or practice by Defendants; (2) occurring in

17   trade or commerce; (3) that had an impact on the public; (4) injury to Databricks'

18   business or property; and (5) causation. *Hangman Ridge Training Stables, Inc. v. Safeco*

19   *Title Ins. Co*., 719 P.2d 531, 533 (Wash. 1986). Defendants contend that Databricks has

20

21

22

1    failed to plausibly plead the second element—that Defendants engaged in an unfair or

2    deceptive act or practice *occurring in trade or commerce*.  (*See* Mot. at 16; Reply at 8-9.)

3         Under the CPA, "trade" and "commerce" include "the sale of assets or services,

4    and any commerce directly or indirectly affecting the people of the state of Washington."

5    RCW 19.86.010(2).  Databricks asserts that Washington "is the locus of Defendants'

6    extortion scheme" because Washington is where Mr. Weisfield and Mr. Chummun

7    acquired the Asserted Patents, formed the Corporate Entity Defendants and the Non-Party

8    Corporate Entities, and directed the Corporate Entity Defendants and Non-Party

9    Corporate Entities to file lawsuits, including the ByteWeavr lawsuit against Databricks.

10   (Compl. ¶¶ 56; *see id.* ¶¶ 9-10, 17, 19, 22-23; Resp. at 19 (citing Compl. ¶¶ 108-09).)[13]

11   Defendants respond that "purchasing [and assigning] patents [and] forming LLCs to

12   protect assets . . . are not unfair or deceptive acts or practices" and that Databricks' CPA

13   claim concerns "the activities of two Texas LLCs [i.e., ByteWeavr and Mind Fusion] in

14   Texas [that] do not affect Washingtonians."  (Reply at 8.)

15        The Washington legislature has directed that the CPA "shall be liberally construed

16   [so] that its beneficial purposes may be served."  RCW 19.86.920.  To that end, the

17   Washington Supreme Court has held that even Washington residents "that direct unfair

18   and deceptive practices only to out-of-state residents" satisfy the "trade or commerce"

19

20        [13] Databricks further asserts that Defendants' conduct indirectly affects Washington
     residents because "it has the capacity to injure other persons.'"  (Resp. at 19 (citing Compl.
21   ¶ 142).)  However, that allegation is relevant to the "public interest" element of a CPA claim—
     not to the "trade or commerce" element.  *See* RCW 19.86.093 ("a claimant may establish that the
22   act or practice is injurious to the public interest because it . . . has the capacity to injure other
     persons.").  The court therefore does not consider this assertion in its analysis.

1    element and are subject to CPA claims.  *See Thornell*, 363 P.3d at 591; *see id.* at 592.

2    Here, Databricks alleges that Washington residents Mr. Weisfield and Mr. Chummun,

3    through the Corporate Entity Defendants, have committed unfair and deceptive practices

4    against Databricks by filing the ByteWeavr lawsuit.  (*See* Compl. ¶¶ 9-10, 17-20.)

5    Construed liberally, Databricks' allegations could suffice to state a CPA claim against

6    Defendants at this stage *if* Databricks can first overcome Defendants' *Noerr-Pennington*

7    immunity.  However, because overcoming *Noerr-Pennington* immunity will require

8    Databricks to plead additional facts that are not currently in its complaint, the court

9    cannot rule on this issue at this time.[14]

10        2.  *Databricks' Civil Conspiracy Claim*

11        Defendants also allege that Databricks has failed to state a civil conspiracy claim.

12   To plead a civil conspiracy claim, Databricks must show that "two or more persons

13   combine[d] to accomplish an unlawful purpose or combine[d] to accomplish some

14   purpose not in itself unlawful by unlawful means."  *Corbit v. J.I. Case Co.*, 424 P.2d 290,

15   295 (Wash. 1967).

16        Databricks contends that Defendants "have engaged in a civil conspiracy to

17   commit acts of unfair competition in violation of the [CPA]."  (Resp. at 1.)  Specifically,

18   Databricks alleges that Mr. Weisfield and Mr. Chummun "caused [the Corporate Entity

19   Defendants and the Non-Party Corporate Entities] to enter into transactions with one

20   another and third parties to obtain the patents, and then to assert them . . . to implement

21   

22   ───────────────
        [14] For the same reasons, the court does not opine on Databricks' argument that
     Defendants' conduct "directly" impacts Washington residents.  (*See* Resp. at 20.)

ORDER - 26

their extortion scheme." (Compl. ¶¶ 146-47.) Defendants counter that Databricks failed to plausibly plead an unlawful purpose because "the alleged object of the conspiracy"—filing patent infringement suits—is immune under *Noerr-Pennington*. (Mot. at 18.) The court agrees with Defendants. Defendants' protected litigation activities cannot form the basis of a conspiracy claim. *See Bay Area Surgical Mgmt. LLC v. Aetna Life Ins. Co.*, No. 15-cv-1416-BLF, 2016 WL 3880989, at *9 (N.D. Cal. July 18, 2016) ("[A]fter removing the allegations concerning *Noerr* protected activity, Plaintiffs have not sufficiently alleged facts to plausibly establish a conspiracy."). Accordingly, Databricks' civil conspiracy claim cannot survive a motion to dismiss on the facts as pleaded.

**F.    Leave to Amend**

In light of the liberal policy in favor of granting leave to amend, *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003), the court dismisses Databricks' claims without prejudice and grants it leave to file an amended complaint by **March 31, 2025** that addresses the deficiencies identified in this order.

## IV.    CONCLUSION

For the foregoing reasons, the court GRANTS in part and DENIES in part Defendants' motion to dismiss, or alternatively to transfer or stay, this case (Dkt. # 23). Specifically:

(1) Defendants' motion to dismiss Databricks' PTPA claim is DENIED as moot;

(2) Defendants' motion to dismiss Databricks' CPA and civil conspiracy claims is GRANTED;

(3) Defendants' motion to transfer or stay this case is DENIED as moot;

1    (4) The court GRANTS Databricks leave to file an amended complaint by **March**

2    **31, 2025**.  Failure to timely file an amended complaint that addresses the

3    deficiencies identified in this order will result in dismissal of this case with

4    prejudice; and

5    (5) The court defers consideration of the parties' discovery dispute (*see* Dkt.

6    ## 36, 37) until after Defendants answer or respond to Databricks' amended

7    complaint, if any.

8

9    Dated this 14th day of March, 2025.

10

11   JAMES L. ROBART
     United States District Judge

12

13

14

15

16

17

18

19

20

21

22

ORDER - 28